## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MASTER-HALCO, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 3:09cv1546 (MRK) |
| v. | : | |
| | : | |
| SCILLIA, DOWLING & | : | |
| NATARELLI, LLC, et al., | : | |
| | : | |
| Defendant. | : | |

## <u>RULING AND ORDER</u>

This case, which proceeds to trial in less than two weeks, includes allegations that the Defendant accounting firm conspired with a third party, Michael Picard, to defraud the Plaintiff Master-Halco, Inc. out of a substantial sum of money.  Mr. Picard and his company, Atlas Fence ("Atlas"), were customers of Master-Halco and clients of the Defendant accounting firm.  At the risk of overgeneralization, Master-Halco says that the Defendants conspired with Mr. Picard to intentionally misrepresent Atlas's financial condition to lull Master-Halco into deferring taking action to collect on the debt Atlas owed it.  Master-Halco alleges that by the time it tried to collect on the debt, Mr. Picard (with the help of Defendants) had already fraudulently disposed of, or otherwise hidden, his assets, leaving Master-Halco, an unsecured creditor, without assets to realize on its debt.  *See* Compl. [doc. # 15].

The issue currently before the Court is the scope of evidence regarding this alleged civil conspiracy that Master-Halco should be permitted to introduce at trial.  As Master-Halco tells it, Mr. Picard was at the center of multiple fraudulent acts and schemes that were all part of the overarching

1

conspiracy described above.  Master-Halco would like to introduce evidence of these allegedly conspiratorial acts at trial, to which Defendants have, in many cases, strenuously objected.  Though the Court has consistently explained that Master-Halco must connect any evidence of conspiratorial acts with the Defendants, it has become clear over the course of several pre-trial conferences that the Court should provide the parties with further guidance on this issue.  This opinion attempts to do so.

Under Connecticut law, civil conspiracy is not an independent cause of action.  "Rather, the action is for damages caused *by acts committed pursuant to a formed conspiracy* rather than by the conspiracy itself. . . . Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort."  *Macomber v. Travelers Property & Casualty Corp.*, 277 Conn. 617, 636 (2006) (emphasis and alteration in original, citation omitted).  To succeed on a claim of civil conspiracy, a plaintiff must prove the following elements:

> (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff.

*Id.* at 635-36 (citation omitted).  The purpose of a civil conspiracy claim is to impose liability on all those who agreed to join the conspiracy.  By joining, the members become legally responsible for the tortious acts taken in furtherance of the object of the conspiracy, including those taken by co-conspirators.  *See id.* at 636; *see also Noll v. Hartford Roman Catholic Diocesan Corp.*, No. X04CV024000582S, 2005 WL 2130212, at *2 (Conn. Super. Ct. July 29, 2005) ("[T]he benefit of . . . of civil conspiracy to a plaintiff is not that it creates liability where otherwise none might exist, but rather it expands the universe of those potentially liable for the harm.").  To say that individuals "join" a conspiracy, thereby exposing them to liability, is to say that they agree to participate, in some manner, in the object of the conspiracy.  *See Macomber*, 277 Conn. at 636.  Here, according to

2

the Complaint, the object was to defraud Master-Halco by overstating the financial health of Atlas while also hiding its (and Mr. Picard's) personal assets.   *See* Compl. [doc. # 15] ¶ 1.

As explained by the Connecticut Supreme Court, implicit in the purpose of imposing civil conspiracy liability – as well as in the requirement that a plaintiff prove an underlying tort – "is the notion that the coconspirator be liable for the damages flowing from the underlying tortious conduct to which the coconspirator agreed."  *Macomber*, 277 Conn. at 636.  This reasoning, however, necessarily limits how far civil conspiracy liability can be stretched.  For example, liability cannot be imposed on those whose innocent conduct unwittingly furthers a conspiracy:

> [I]n order to justify a verdict under the count alleging conspiracy against any party, it would be necessary to find that that party was actuated in what he did by the same fraudulent intent, and that he had substantially the same knowledge of the fraudulent means and purposes as the other participants.

*Williams v. Maislen*, 116 Conn. 433, 438 (1933); *see also Anderson v. Gordon, Muir & Foley, LLP*, No. CV030827411S, 2006 WL 1493736, at *9 (Conn. Super. Ct. May 12, 2006) (same). Furthermore, mere association with a tortfeasor, or even knowledge of wrongdoing, without more, is insufficient to support a civil conspiracy claim. *See, e.g.*, *Fusco v. Lepine*, No. HHDCV054013841S, 2006 WL 463130, at *2 (Conn. Super. Ct. Feb. 3, 2006) ("[I]t is not sufficient to allege [that defendant] knew [a co-conspirator] was generally engaging in . . . unacceptable conduct in his practice. . . . Plaintiff must allege that both [defendant] and [co-conspirator] acted with the intent to defraud this plaintiff in the manner in which he is alleging he was defrauded."). Finally, it is not enough to show that the co-conspirator reached some undefined or unrelated agreement with the tortfeasor; a plaintiff must show that the agreement was the obtaining of a particular objective, and that the act taken in furtherance thereof caused the plaintiff's injury. *See Dumais v. Hartford Roman Catholic Diocese*, No. X07CV010077631S, 2002 WL 31015708, at *2 (Conn. Super. Ct. July 31,

3

2002) ("It is inadequate to aver that a group of persons agreed to perform certain other acts but not the injurious conduct which harmed the plaintiff . . . .").

Similarly, there are temporal limits to civil conspiracy liability.  In 2006, the Connecticut Supreme Court rejected the argument that liability could be imposed on a co-conspirator for damage caused by a tort committed *before* the co-conspirator joined the conspiracy.  "By that time," the Court explained, "the underlying tort had already been completed."

> The purpose of civil liability is to allocate the loss between persons who may be in some legal sense responsible for that loss.  We can see no reason to extend that purpose to a defendant who could not have been in any sense responsible for a loss because it had not begun to participate in the civil conspiracy resulting in that loss until long after the loss was incurred.

*Macomber*, 277 Conn. at 636-37.

In this case, Master-Halco argues that it ought to be permitted to introduce evidence of "any and all of the acts of any conspirator that are in furtherance of the formed conspiracy . . . , even after the defendant[s] ha[ve] removed [themselves] from the conspiracy."  Pl.'s Supplemental Br. [doc. # 115] at 3.  "It is then for the jury to decide whether the plaintiff was harmed by any of the established acts.  After all, a defendant is held jointly liable for the acts of a co-conspirator."  *Id.*

While each of the above-cited statements from Master-Halco's brief may be correct in isolation and to some degree, the Court is concerned that, in combination, they evidence a misunderstanding of the scope of civil conspiracy liability.  In particular, it seems possible that Plaintiff is under the mistaken impression that it can introduce evidence of wrongful acts and/or schemes of Mr. Picard of which Defendants were in no way aware or involved, or that entirely pre-date or post-date Defendants' involvement with Mr. Picard.  This is simply not the case.  Even if evidence of Mr. Picard's allegedly unlawful activities with *other* individuals would have some

4

tendency to suggest that Defendants conspired with Mr. Picard here, its probative value would not only be minimal, but also would be substantially outweighed by the very real danger of unfair prejudice to Defendants – who, by definition, had nothing to do with these other matters, meaning that any prejudice would be entirely unfair.  *See* Fed. R. Evid. 403; *see also* Order [doc. # 114] at 2 (discussing difference between "fair" and "unfair" prejudice); *United States v. Abu-Jihaad*, No. 3:07CR57, 2008 WL 282368, at *4 (D. Conn. Jan. 31, 2008) (same).

The extent of Defendants' liability, as discussed above, is necessarily limited by the contours of their alleged conspiratorial agreement with Mr. Picard (and/or other co-conspirators).  Thus, if Defendants and Mr. Picard agreed to perform scheme *A* in order to accomplish objective *X*, Defendants could be held liable for "an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object."  *Macomber*, 277 Conn. at 636.  That does not mean, however, that the Defendants would also be liable for Mr. Picard's agreement with other individuals to perform scheme *B* to accomplish objective *Y*.  In the latter example (unless Defendants were aware of that scheme and sought to further it in some way), there would be no basis for holding Defendants liable for damage caused by Mr. Picard pursuant to that scheme or in furtherance of that object, for Defendants had agreed to neither – and it is only through such agreement that Defendants would join that conspiracy.  *See id.*; *Noll*, 2005 WL 2130212, at *2  For the same reasons, Defendants could not be held liable for damage caused by an agreement Mr. Picard had with other individuals to perform scheme *C* in order to accomplish objective *X* (i.e., the same objective that Defendants had agreed to pursue, but through different means).  However, in this situation, there would likely be a dispute regarding whether it was scheme *A* or scheme *C* – both in furtherance of objective *X* – that caused the Plaintiff's damage, and it would thus be up the jury to determine

5

proximate cause.  *See Label Systems Corp. v. Aghamohammadi*, 270 Conn. 291, 322 (2004).

Since the Court has not yet seen the evidence or heard the testimony that will be produced at trial, it cannot say definitively what Master-Halco will be able to connect to Defendants.  Needless to say, the lawyers have very different views of what the evidence will provide, and the Court is unwilling to resolve those disputes in advance of trial.  However, the Court can say that for the reasons discussed above, Master-Halco may not introduce evidence of the acts of individuals other than Defendants for which there is no evidence that Defendants were involved in the acts or were even aware of the acts or any agreement between Mr. Picard and those other individuals.  *See Fusco*, 2006 WL 463130, at \*2.  Additionally, Master-Halco may not introduce evidence of acts performed by others beyond the date after which it is uncontested that Defendants ceased all involvement with Mr. Picard <u>unless</u> Master-Halco can show either that these later acts were (1) encompassed by the agreement the Defendants had with Mr. Picard (and/or the other co-conspirators); or (2) were caused, to some degree, by acts taken pursuant to or in furtherance of the conspiracy that Defendants joined.  *See Maislen*, 116 Conn. at 438.  Nor can Plaintiff seek to introduce evidence of conspiratorial acts that were completed before Defendants even became involved with Mr. Picard. *See Macomber*, 277 Conn. at 636-37.  Finally, the Court reminds the Plaintiff once more that it may not stray beyond the allegations contained in its Complaint, and that the Court will enforce this requirement at trial.

The lawyers in this case owe a duty to the Court to conform themselves to this guidance. The Court trusts that they will do all they can to abide by these guidelines during the course of the trial.  That said, if it turns out that testimony is elicited that does not adhere to the guidelines discussed above, the Court will strike the testimony, instruct the jury to ignore it, and explain that

the proponent of the testimony was wrong to introduce that testimony in the first place.  The Court

hopes that such an instruction will not be necessary.

IT IS SO ORDERED.

/s/   Mark R. Kravitz_____
United States District Judge

**Dated at New Haven, Connecticut: April 8, 2010**.