UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MASTER-HALCO, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 3:09cv1546 (MRK) |
| v. | : | |
| | : | |
| SCILLIA, DOWLING & | : | |
| NATARELLI, LLC, et al., | : | |
| | : | |
| Defendant. | : | |

## RULING AND ORDER

On April 6, 2010, the Court held one of several conferences in preparation for the upcoming trial of this matter.  During that conference, the Court stated that it was granting Defendants' motion to exclude one of Plaintiff's retained experts, Xhemil (John) Koliani, from testifying at trial.  *See* Defs.' Omnibus Mot. *in Limine* [doc. # 81] § F.  Mr. Koliani, a certified public accountant ("CPA") was retained by the Plaintiff, Master-Halco, Inc. ("Master-Halco") to testify as a damages expert. *See* Pl.'s Expert Disclosure [doc. # 82-20].  The Court indicated that a written opinion explaining the reasons for its decision would follow.  This is that opinion.

## I.

The Court assumes the parties' familiarity with the underlying facts and procedural history of this case.  Suffice it to say for purposes of this opinion that the Plaintiff, a manufacturer of fencing materials, has alleged that the Defendants – an accounting firm, its parent company, and two CPAs employed by the firm – conspired with and aided and abetted Michael Picard, a customer of Plaintiff and a former client of the accounting firm, in defrauding Master-Halco out of payment it was due for

1

products it shipped Mr. Picard's company, Atlas Fence ("Atlas").  Plaintiff alleges that Defendants did this by intentionally misrepresenting Atlas's financial health, thereby lulling Master-Halco, an unsecured creditor, into deferring taking action to collect the debt.  Master-Halco says that by the time it realized the precarious state of Atlas's financial condition, Mr. Picard, with the help of Defendants, had succeeded in fraudulently hiding and/or disposing of assets, such that there was nothing left for Master-Halco to attach or otherwise pursue for satisfaction of the approximately $600,000 debt.  *See* Compl. [doc. # 15].  Additionally relevant is that Master-Halco's lack of success in realizing satisfaction on the Atlas debt was definitively not for want of effort; in fact, it filed several lawsuits against Mr. Picard, Atlas, and several other individuals and entities Master-Halco alleges were involved in Mr. Picard's fraudulent schemes.[1]  Among other things, Master-Halco seeks to be reimbursed in this case for the attorneys' fees it expended litigating those other lawsuits.  *See id.*

Mr. Koliani, as mentioned, was retained, and was expected to testify, "as to the amount and the calculation of damages incurred by Master-Halco in prosecuting the case against Michael Picard and, subsequently, the Defendants."  Pl.'s Expert Disclosure [doc. # 82-20] at 2.  Mr. Koliani, who was asked to assume a Plaintiff's verdict, calculated "to a reasonable degree of probability" that this would total $2,874,000.  *See* Koliani Rep. [doc. # 82-20] at 1-2.  According to Master-Halco, his opinion and testimony would be based on "his knowledge, training, and experience as a certified public accountant and in business valuation" and "his examination of invoices, billing records, and

---

[1] *See, e.g.*, *Master-Halco, Inc. v. Ruocco et al.*, 06cv1221 (D. Conn. filed Aug. 4, 2006); *Master-Halco, Inc. v. D'Angelo et al.*, 06cv1006 (D. Conn. filed June 29, 2006); *Master-Halco, Inc. v. Edith Picard et al.*, No. 04cv129 (D. Conn. filed Jan. 26, 2004); *Master-Halco, Inc. v. Atlas Fence Co., Inc. et al.*, No. 04cv130 (D. Conn. filed Jan. 26, 2004); *Master-Halco, Inc. v. Michael Picard*, No. 04cv131 (D. Conn. filed Jan. 26, 2004).

the credit agreement between Michael Picard and Master-Halco." Pl.'s Expert Disclosure [doc. # 82-20] at 2.  Defendants' primary objection to Mr. Koliani's testimony is that he "does nothing more than add up invoices and then perform a simple interest calculation on the resulting balances" – calculations "within the purview of an ordinary lay person."  Mem. in Supp. of Defs.' Omnibus Mot. *in Limine* [doc. # 82] at 29.  Defendants argue that since the jury could make these calculations on its own, there is a danger of prejudice that could result from the jury being misled into thinking that Mr. Koliani's testimony reflects more than these simple calculations, including, for example, the unwarranted assumption that his testimony is based on his independent investigation of the underlying expenses allegedly incurred by Master-Halco.  *See id.* at 30-31.  The Court agrees.

## II.

"It is well-established that 'the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence.'"  *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (quoting *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962)).  "Limitations of the Rules of Evidence on expert opinion testimony are strictly enforced in the Second Circuit," *GST Telecomms., Inc. v. Irwin*, 192 F.R.D. 109, 110 (S.D.N.Y. 2000), and the proponent of the testimony has the burden of establishing its admissibility by a preponderance of the evidence.  *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592 n.10 (1993); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

The admissibility of expert testimony is governed by the *Federal Rules of Evidence*.  Rule 702 requires that experts be qualified to testify on the basis of "scientific, technical, or other specialized knowledge" on a subject matter that "will assist the jury to understand the evidence or determine a fact in issue."  Fed. R. Evid. 702.  Thus, expert testimony is excluded under Rule 702 if it is "directed solely to lay matters which a jury is capable of understanding and deciding without the

expert's help." *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001) (quoting *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991)).  "In inquiring into the potential helpfulness of the proffered expert testimony, the court decides whether it concerns matters requiring assistance to the kind of people expected to sit on the jury." *Souther v. Eli Lilly & Co. (In re Zyprexa Prods. Liability Litig.)*, 489 F. Supp. 2d 230, 284 (E.D.N.Y. 2007).  "Expert testimony should not merely reiterate arguments based on inferences that can be drawn by laypersons; those can properly be advanced by the parties in their summations." *Id.*

And "[a]s with any other relevant evidence, the court should exclude expert testimony [under Rule 403] if its prejudicial effect substantially outweighs its relevance." *Mulder*, 273 F.3d at 101; *see also Daubert*, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.") (citation omitted); *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) ("[T]he Supreme Court, echoed by members of our own court, has noted the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations.").  These limitations apply to all expert testimony, regardless of field or expertise, though of course the factors relevant to the admissibility inquiry will vary based on the nature of the proffered testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999); *see also* Advisory Committee Notes on the 2000 Amendment of Rule 702 ("While the relevant factors for determining reliability will vary from expertise to expertise, the amendment rejects the premise that an expert's testimony should be treated more permissively simply because it is outside the realm of science.").

4

## III.

With the above principles in mind, and after reading Mr. Koliani's report and the entirety of his 155-page deposition transcript, the Court has no difficulty concluding that Mr. Koliani's testimony would not only be unhelpful to the jury, but would also be likely to cause Defendants unfair prejudice.

In order to "calculate" the damages Defendants would owe Master-Halco (assuming a Plaintiff's verdict), Mr. Koliani: (1) took the amount Atlas owes Master-Halco; (2) added in the amount of attorneys' fees and litigation costs Master-Halco has incurred litigating the various suits related to Picard and Atlas; and (3) multiplied the amounts by an interest rate.  There is absolutely no reason why the jury cannot do this for itself; in fact, juries do these types of calculations all the time.   At his deposition, Mr. Koliani was asked whether he thought a jury could perform the same tasks that he did for Plaintiff:

| | |
|---|---|
| Question: | Assuming that the members of the jury or at least a member of the jury knows how to add, multiply, divide, and subtract, they don't need you to add up numbers do they? |
| Mr. Koliani: | That's one part of the calculation, right.  If they could add invoices together, they could come up to [sic] their own conclusion. |
| Question: | And that's all you did here? |
| Mr. Koliani: | Correct. |

Koliani Dep. at 32:13-22.  Mr. Koliani went on to say that although "part of my calculation was summarizing the numbers," he also had to "verify" some information.  *Id.* at 34:7-11.  He explained that "you have to go through the exercise of saying, okay, does the invoice agree to what the records of the company agree to," *id.* at 34:21-25, but then said that he did no such thing with regard to the attorneys' fees – which comprise the vast majority of the damages Master-Halco claims – because "I

had a legal bill from the attorneys which detailed what their services are rendered for," *id.* at 35:13-15.

| | |
|---|---|
| Question: | So all you did with the attorneys' fees is you took numbers off a page and added them up? |
| Mr. Koliani: | Correct, and allocated between parties. |
| Question: | We'll get to the allocation in a moment, but you took numbers on a page and added them up; correct? |
| Mr. Koliani: | Correct. |
| …. | |
| Question: | It was plain and simple arithmetic, wasn't it? |
| Mr. Koliani: | Correct. |

*Id.* at 38:12-17, 39:3-5.  Mr. Koliani was also asked why, in his "Summary of Calculated Losses," *see* Koliani Rep. [doc. # 82-20] at 2, he included virtually all of the attorneys' fees and litigation expenses incurred by Master-Halco in other cases in his calculation of damages that Defendants would owe.

| | |
|---|---|
| Question: | So you're saying that everybody is liable for virtually everything; correct? |
| Mr. Koliani: | Correct. |
| Question: | What did you based that on? |
| Mr. Kolinai: | Based on [Plaintiff's] legal counsel's foundation. |
| Question: | In other words, [Plaintiff's counsel] told you to do it, so you did it; correct? |
| Mr. Koliani: | He explained to me why and I did it. |
| Question: | What did he explain to you when he said why? |
| Mr. Koliani: | Based on case law. |
| Question: | What case law? |

6

Mr. Koliani:     I don't remember exactly.  He explained it to me, though.

Question:          What did he say to you?

Mr. Koliani:     Basically how everyone would be liable in this case.

Question:          What did he say?

Mr. Koliani:     I don't remember exactly.

Question:          Do you remember generally?

Mr. Koliani:     No.  It was two years ago.  I don't remember exactly.

*Id.* at 104:25 – 105:1-20.  Mr. Koliani affirmed that he had a responsibility to make his own independent determination of whether what he was asked to do with the attorneys' fees was reasonable, and explained that he discharged this duty "[w]ith [Plaintiff's counsel]'s explanation of the law."  *Id.* at 117:13-14; *see also id.* at 120:21– 121:1 ("A: It's based on case law. That's all I remember.  Q: And you didn't do any independent investigation to determine whether that was correct. Is that correct?  A: No, I did not.").   Mr. Koliani did nothing to determine whether the attorneys' fees were reasonable, explaining that he "wasn't asked to do that," *id.* at 35:19, and that he "ha[s] no reason to believe they're unreasonable," *id.* at 46:24-25.  Nonetheless, he suggested at one point that he might testify that the fees were reasonable.  *See id.* at 126:5-10 ("Q: Are you going to testify that these fees are reasonable?  A: I think, yes.  Q:  You are?  A: Well, I have them listed. They're outstanding bills.").  When asked why he added interest to the attorneys' fees, he said that it was because Master-Halco's lawyer told him to do so.

Question:          Do you know whether that's proper, Mr. Koliani, to add interest to attorneys' fees in this kind of case?

Mr. Koliani:     I don't recall.

Question:          You did that because the lawyer told you to, didn't you?

7

Mr. Koliani:     I was asked to do that, yes.

Question:       Without doing any research or investigation to determine whether that was reasonable.  Isn't that true?

Mr. Koliani:     Correct.

*Id.* at 58:12-22.

As one would imagine, Defendants in this case dispute the sources of damages that Master-Halco can claim.  They also argue that since the gravamen of Master-Halco's claims is that, but for the fraudulent financial statement prepared by Defendants, it would have taken legal action against Mr. Picard and Atlas sooner, Master-Halco must take account of that hypothetical scenario by deducting the expenses it would have had to spend anyway.  *See* Mem. in Supp. of Defs.' Omnibus Mot. *in Limine* [doc. # 82] at 26-28.  Defendants also argue that by deferring litigation, Master-Halco profited from sales made to Atlas on a cash-only basis.  *See id.* at 27.  Whether or not Defendants are correct factually remains to be seen, but Mr. Koliani made no calculations, inquiries, or investigations regarding the possibility that the net damages could be different from the gross:

Question:       If there was a detriment that they're entitled to recover but that detriment is offset by a benefit, then to a reasonable degree of probability the damages calculation is the net of those two amounts, correct?

Mr. Koliani:     Could be.

Question:       And you didn't do anything to see whether that was the situation here, did you?

Mr. Koliani:     No.

Question:       And that was because the lawyer didn't ask you to do it; correct?

Mr. Koliani:     Correct.

*Id.* at 76:12-24.

Question:       Mr. Koliani, you're testifying as to what's due to Master-Halco, aren't you?

8

| | |
|---|---|
| Mr. Koliani: | Correct. |
| Question: | And you know that in testifying what's due, you have to subtract from what was spent, what was saved? |
| Mr. Koliani: | Not – yes and no.  It depends.  There's got to be more facts to it than just what the savings were.  I mean both sides could have had savings. |
| Question: | You didn't do anything to investigate what the savings were, did you? |
| Mr. Koliani: | No. |
| Question: | You didn't do anything to take them into account, did you? |
| Mr. Koliani: | I was not asked to. |
| Question: | I didn't ask[] you whether you were asked to.  You didn't do it? |
| Mr. Koliani: | No. |
| …. | |
| Question: | What did you do to investigate [the possibility of savings]? |
| Mr. Koliani: | I didn't do anything. |

*Id.* at 94:3-20, 95:24-25.

As the above-quoted passages are meant to illustrate, Mr. Koliani's task was a narrow one: add up the numbers Plaintiff's counsel told him to add up, apply the interest rate that Plaintiff's counsel told him to apply, and ignore virtually everything else.  There is nothing that Mr. Koliani was asked to do that a jury of laypeople could not do equally well.  In fact, a jury would probably do a *better* job, as it would at least apply a dose of skepticism to what the attorneys tell it.  *See United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (holding inadmissible expert testimony that merely "undertakes to tell the jury what result to reach," thereby "attempt[ing] to substitute the expert's judgment for the jury's"); *In re Zyprexa Prods. Liability Litig.*, 489 F. Supp. 2d at 284 (E.D.N.Y. 2007) ("Expert testimony should not merely reiterate arguments [that] . . . . can properly be

9

advanced by the parties in their summations.").

   In short, Mr. Koliani's testimony would in no way help the jury in understanding the evidence or making a decision about any of the factual matters in dispute.  *See* Fed. R. Evid. 702; 4-702 *Weinstein's Fed. Evid.* § 702.03 ("Expert testimony is generally not permitted concerning factual issues that are within the knowledge and experience of ordinary lay people, because it would not assist the trier of fact to understand the evidence or determine a fact in issue.").  Mr. Koliani essentially conceded at his deposition that he would not be testifying on anything beyond the summation of the numbers themselves:

| | |
|---|---|
| Question: | It's true, is it not, that you are not going to be testifying as to whether or not anything [Defendants] did caused damages to Master-Halco? |
| Mr. Koliani: | Yes, correct. |
| Question: | You're not going to be testifying as to whether or not Master-Halco would have been better off or worse off if it had brought a lawsuit in April of 2003 than if it waited until 2004 to bring a lawsuit, are you? |
| Mr. Koliani: | I'm not testifying to that. |
| Question: | And you're not testifying as to whether or not Master-Halco relied to its detriment on anything my clients did, are you? |
| Mr. Koliani: | Correct. |
| Question: | And you're not testifying as to whether or not the numbers that are included in your listing of attorneys' fees are reasonable numbers, are you? |
| Mr. Koliani: | Correct. |
| Question: | And you're not testifying as to whether or not it was reasonable to allocate those attorneys' fees in the manner you have allocated it, are you? |
| Mr. Koliani: | No, I'm not. |
| Question: | And likewise, you're not testifying as to whether any of the other numbers aside from [defense counsel] attorneys' fees are reasonable or not, are you? |
| Mr. Koliani: | Correct. |

10

Koliani Dep. 138:10 – 139:13.

Even though Mr. Koliani was asked to perform, and would presumably testify about, only mundane tasks that the jury could perform for itself, there is nonetheless a real danger in permitting him to testify as an "expert."  The danger is that the jury could be mislead into thinking that Mr. Koliani actually *did* do some of the things that he actually did not do – like determine reasonableness of attorneys' fees and costs, or whether Master-Halco was better off deferring litigation against Atlas and Mr. Picard.  Any such assumption by the jury would clearly cause unfair prejudice to the Defendants.   Therefore, even assuming that Mr. Koliani's testimony would have *some* value, it would be substantially outweighed by the possibility of either misleading the jury, causing unfair prejudice, or both.  *See* Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, . . . "); 4-702 *Weinstein's Federal Evidence* § 702.03 ("Trial courts need to be mindful, however, of the powerful and potentially misleading effect of expert testimony, and to recognize that unreliable or inapposite expert testimony is not helpful to the finder of fact. Such testimony can also be excluded by applying Rule 403.").

## IV.

For the foregoing reasons, Defendants' Omnibus Motion *in Limine* [doc. # 81] § F to exclude the testimony of Mr. Koliani  is GRANTED, as his testimony is inadmissible under Rules 702 and 403 of the *Federal Rules of Evidence*.

IT IS SO ORDERED.


/s/ <u>Mark R. Kravitz</u>
United States District Judge



**Dated at New Haven, Connecticut: April 9, 2010**.