# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MASTER-HALCO, INC.,               :
                                   :
               Plaintiff,        :
                                     :            No. 3:09cv1546 (MRK)
v.                                 :
                                     :
SCILLIA, DOWLING &             :
NATARELLI, LLC, et al.,        :
                                     :
              Defendants.      :

## MEMORANDUM OF DECISION

In this case, the Plaintiff, Master-Halco, Inc. ("Master-Halco"), a manufacturer of fencing materials, has brought claims of fraudulent misrepresentation, aiding and abetting fraud, and civil conspiracy against the Defendants, Scillia, Dowling & Natarelli, LLC, an accounting firm; two of the firm's certified public accountants ("CPAs"), Joseph Natarelli and Robert Mercado; and its parent company, UHY, LLC. *See* Compl. [doc. # 15]. The somewhat unusual aspect of this case, however, is that the accountants did not do any work for Plaintiff; instead, Master-Halco's claims are predicated on work performed by Defendants for a customer of Master-Halco, Michael Picard, and his company, Atlas Fence ("Atlas"). According to Master-Halco, the Defendants created a misleading financial statement for Atlas for the express purpose of inducing Master-Halco into delaying taking any action to collect on the approximately $600,000 debt it was owed by Atlas. Master-Halco alleges that by the time it was shaken from its false sense of security regarding Atlas's financial wherewithal, Mr. Picard – with the Defendants' assistance – had successfully hidden and/or otherwise disposed of assets, such that there was nothing left for Master-Halco to realize on its debt.

1

Master-Halco seeks to hold Defendants responsible for their alleged wrongdoing, on the theory that:

> Master-Halco relied on the financial statement prepared by [Defendants] to ship goods [to Atlas]. If [Master-Halco] had known the truth, however, [it] would not have been likely to continue shipping goods and would have moved to bring [its] debt to judgment or sought a prejudgment remedy against Picard and Atlas at an earlier point in time, and/or would have otherwise moved to protect [its] debt, and it is likely that an attachment could have been made at a time before Picard had a chance to make his assets disappear.

Compl. [doc. # 15] ¶ 24.

While Master-Halco has had limited success in collecting on the Atlas debt through litigation, it has not been for lack of effort; in addition to this case, in 2004 and 2006 Master-Halco filed a number of lawsuits against Atlas, Mr. Picard, Mr. Picard's mother, and various other individuals and entities that Master-Halco alleges were involved in Mr. Picard's fraudulent schemes.[1] Among other things, Master-Halco seeks to be reimbursed in this case for the attorneys' fees it expended litigating those other lawsuits, which total more than $2 million. *See* Restatement (Second) Torts § 914 (explaining that although "damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation," "[o]ne who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees

---

[1] *See, e.g.*, *Master-Halco, Inc. v. Ruocco et al.*, No. 06cv1221 (D. Conn. filed Aug. 4, 2006); *Master-Halco, Inc. v. D'Angelo et al.*, No. 06cv1006 (D. Conn. filed June 29, 2006); *Master-Halco, Inc. v. Edith Picard et al.*, No. 04cv129 (D. Conn. filed Jan. 26, 2004); *Master-Halco, Inc. v. Atlas Fence Co., Inc. et al.*, No. 04cv130 (D. Conn. filed Jan. 26, 2004); *Master-Halco, Inc. v. Michael Picard*, No. 04cv131 (D. Conn. filed Jan. 26, 2004). All of these cases were either referred to or dismissed in favor of the jurisdiction of the Bankruptcy Court as matters related to the ongoing Atlas and/or Picard bankruptcy proceedings. This case was initially referred as well, *see* Ruling [doc. # 25], *Master-Halco, Inc v. Scillia, Dowling & Natarelli LLC et al*, No. 06cv1082(AHN) (D. Conn. Nov. 17, 2006), but on September 25, 2009, this Court, upon consideration of the factors outlined in *In re Orion Pictures Corp.*, 4 F.3d 1095, 1011 (2d Cir. 1993), granted Defendants' motion to withdraw the reference from Bankruptcy Court. *See* Order [doc. # 8].

and other expenditures thereby suffered or incurred in the earlier action"); *see also, e.g.*, *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 426 (5th Cir. 2008); *Mut. Fire, Marine & Inland Ins. Co. v. Costa*, 789 F.2d 83, 89 (1st Cir. 1986).

With the trial of this matter upcoming, the Court has been called upon to rule on a number of hotly-contested evidentiary issues. *See, e.g.*, Order dated Apr. 9, 2010 [doc. # 131] (granting Defendants' motion pursuant to Fed. R. Evid. 702 to exclude the testimony of Plaintiff's damages expert because it would have been unhelpful to the jury); Order dated Apr. 8, 2010 [doc. # 125] (ruling on the scope of evidence that Plaintiff will be permitted to introduce regarding its civil conspiracy claim); Order dated Apr. 5, 2010 [doc. # 118] (holding that since Connecticut law does not recognize a cause of action for a debtors' breach of fiduciary duties owed creditors once debtors enter the "zone of insolvency," Plaintiff's expert could not testify that Defendants aided and abetted Mr. Picard's alleged breach of duty owed Master-Halco). Now pending before the Court is Master-Halco's motion *in limine* to exclude certain evidence related to the other lawsuits it brought to try to collect on the Atlas debt.

Defendants have indicated that they intend to introduce evidence that they say: (1) rebuts Master-Halco's claim that, but for the false financial statement prepared by Defendants, it would have sued Mr. Picard and Atlas earlier; and (2) shows that Master-Halco had other, lower-cost alternatives to litigation available to it, including, at least in some cases, offers to compromise. With regard to the first intended purpose of this evidence, Defendants argue that Master-Halco's delay in taking any collection efforts was a calculated business decision, premised on its fear that any such action would push Atlas into bankruptcy (which did ultimately occur), where Master-Halco would likely receive only a fraction of what it was owed. As for the second intended purpose, Defendants

argue that since Master-Halco seeks to recover in *this* suit the expenses incurred in the other cases, Defendants should be able to present evidence from which the jury could infer that those fees were not reasonably expended.  Master-Halco, however, has objected to the introduction of this evidence, arguing that it is inadmissible under Rule 408 of the *Federal Rules of Evidence*, which generally bars evidence related to settlement negotiations "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount . . . ."  Fed. R. Evid. 408.  In the alternative, Master-Halco argues that the evidence is inadmissible under Rule 403 because it would cause it unfair prejudice and/or would confuse the jury.  *See* Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .").

This issue initially arose within the context of the proffered testimony of Mr. Jeffrey Hellman, the former attorney of Atlas and Mr. Picard.  *See* Pl.'s Mot. *in Limine* to Preclude the Test. of Jeffrey Hellman [doc. # 76]; Defs.' Opp'n to Pl.'s Mots. [doc. # 95] at 7-11.  Following one of many pretrial conferences, the Court permitted the parties to file supplemental briefs to address the issue further, *see* Order dated Mar. 26, 2010 [doc. # 100], which they did, *see* Pl.'s Supplemental Br. Regarding Admissibility of Settlement Communications/Docs. ("Pl.'s Supp. Br.") [doc. # 129] at 1-3; Defs.' Supplemental Mem. of Law Regarding Admissibility of Settlement Discussions ("Defs.' Supp. Br.") [doc. # 133] at 1-5.  The Court also held an on-the-record telephonic conference with the parties on April 13, 2010, to solicit additional information regarding the nature, scope, and purpose of the proffered evidence.  On the basis of the parties' briefs and the statements of counsel, and for the reasons explained below, the Court finds that neither Rule 408 nor Rule 403 bars the introduction of the disputed evidence.  Therefore, Master-Halco's motion *in limine* is denied.

4

# I.

Rule 408, entitled "Compromise and Offers to Compromise," provides in relevant part:

(a) Prohibited uses.  Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:

> (1) furnishing or offering or promising to furnish or accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise the claim; and

> (2) conduct or statements made in compromise negotiations regarding the claim . . . .

Permitted uses.  This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). . . .

Fed. R. Evid. 408.  The Rule "essentially forbids a court from basing adverse findings on a party's concessions in settlement negotiations." *Rein v. Socialist People's Libyan Arab Jamahiriya*, 568 F.3d 345, 351 (2d Cir. 2009).  As Judge Weinstein has explained, "[t]he Rule is based on the policy of promoting the compromise and settlement of disputes," by taking into account "the reality that permitting the consideration of settlement offers as reflecting an admission of liability would discourage parties from discussing settlement or making settlement offers."  2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 408.02[1] (Joseph M. McLaughlin ed., 2d ed.).

Rule 408, however, has limits.  First, as the last part of its text indicates, evidence regarding settlement negotiations is admissible if used for a purpose other than one of those expressly prohibited by the Rule.  *See PRL USA Holdings, Inc. v. U.S. Polo Ass'n*, 520 F.3d 109, 114 (2d Cir. 2008) ("The exception clearly intends to exempt from the absolute prohibition of the Rule evidence focused on issues different from the elements of the primary claim in dispute."); *Trebor Sportswear Co. v. Limited Stores, Inc*., 865 F.2d 506, 510 (2d Cir. 1989) ("Evidence of an offer to compromise,

though otherwise barred by Rule 408, can fall outside the Rule if it is offered for "another purpose' . . . ").  Second, and also relevant to this case, the Rule does not operate to exclude evidence when the validity or amount of the claim was not disputed.  *See Pierce v. F.R. Tripier & Co.*, 955 F.2d 820 (2d Cir. 1992) (Rule 408 inapplicable to "business communications"); *In re B.D. Int'l Discount Corp.*, 701 F.2d 1071, 1074 n.5 (2d Cir. 1983) (Rule 408 inapplicable when the claim is not disputed).

## II.

According to Master-Halco, "the only relevant purpose that the Defendants can possibly seek to present this evidence is in connection with a damages mitigation argument; i.e., that had Master-Halco settled the claim when it should have . . . , its damages would be less."  Pl.'s Supp. Br. [doc. # 129] at 2.  Master-Halco argues further that this purpose was expressly foreclosed by the Second Circuit in *Pierce*.  *See* Pl.'s Supp. Br. [doc. # 129] at 2 ("Evidence that demonstrates a failure to mitigate damages goes to the 'amount' of the claim and thus, if the offer was made in the course of compromise negotiations, it is barred under the plain language of Rule 408.") (quoting *Pierce*, 955 F.2d at 826-27).  Master-Halco also urges the Court to consider the public policy considerations animating Rule 408 – namely, "that disclosing confidential settlement communications made for the purpose of resolving claims would have a chilling effect on parties in the future if those very statements could be used against them in litigation."[2]  *Id.* at 3.

---

[2] In its motion related to Mr. Hellman, Master-Halco also argued that Mr. Hellman's testimony could violate Conn. Gen. Stat. § 52-235d, which provides that, subject to certain exceptions, "an attorney for one of the parties or any other participant in a mediation shall not voluntarily disclose or, through discovery or compulsory process, be required to disclose any oral or written communication received or obtained during the course of a mediation."  *See* Pl.'s Mot. *in Limine* to Preclude the Test. of Jeffrey Hellman [doc. # 76] at 3-4.  However, during the on-the-record teleconference held on April 13, 2010, the counsel for Defendants stated that it would not seek to elicit any testimony or introduce any evidence related to any mediation efforts.  Therefore, on the basis of that representation, the Court finds this aspect of Plaintiff's objection moot.

While the Court is sympathetic to the public policy considerations that underlie the Rule, in particular, it finds Master-Halco's arguments that the proffered evidence is inadmissible under Rule 408 to be unpersuasive.

First, and most significantly, it appears as though much (if not most) of the disputed evidence does not relate to offers to compromise at all. Although the Court has not yet heard the evidence, the proffer given by counsel for the Defendants – which was not disputed by Plaintiff's counsel – was as follows: For some time prior to Atlas and Mr. Picard filing for bankruptcy, there were ongoing conversations between Mr. Picard and Master-Halco (as well as other Atlas creditors), both formally and informally, in which Mr. Picard tried to persuade Atlas's creditors to "take a haircut" (i.e., accept less than they were owed) so that Atlas could remain in business and not be required to file bankruptcy. In exchange, Mr. Picard offered to continue doing business with those creditors so that they could, at a minimum, reap the profits of an ongoing business relationship with a still-solvent Atlas.[3] Counsel for both parties confirmed that never did Mr. Picard dispute either the amount or validity of the debt Atlas owed Master-Halco; the discussions were instead attempts by Mr. Picard to forestall action to collect the admittedly due debt.

While there is evidence of other communications that the Court will discuss in a moment, those described above clearly do not fall within the purview of Rule 408, no matter the purpose for which Defendants seek to use them. Whatever offers Mr. Picard may have made to Master-Halco regarding the debt, he did *not* dispute either the validity or the amount of Master-Halco's claim – at

7

least one of which is required for the evidence to be inadmissible under Rule 408.  *See* Fed. R. Evid. 408 ("Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim *that was disputed as to validity or amount* . . . .") (emphasis added).  In fact, this very situation is countenanced by the Advisory Committee's notes to Rule 408, which state that, "The policy considerations which underlie the rule do not come into play when the effort is to induce a creditor to settle an admittedly due amount for a lessor sum.  Hence the rule requires that the claim be disputed as to either validity or amount."  *See In re B.D. Int'l Discount Corp.*, 701 F.2d at 1074 & n.5 (finding "no merit" in the argument that testimony regarding a conversation between a debtor a creditor, whereby the former "acknowledged the accuracy of bank records . . . that gave rise to the [creditor's] claims but sought to arrive at a mutually satisfactory schedule of repayments" was inadmissible under Rule 408 because "[a]t the time of negotiation [the debtor] did not dispute [the creditor]'s claim; it was simply endeavoring to get more time in which to pay"); *Lehman Bros. Commercial Corp. v. China Int'l United Petroleum & Chems. Co.*, No. 94CV8304, 1995 WL 380106, at *3 (S.D.N.Y. June 26, 1995) (refusing to strike portions of the complaint referencing attempts to resolve a claim because "[t]he allegations in Plaintiffs' Complaint state that the discussions concerned a method of resolving the claim, not the validity or amount of the claim itself," and explaining that "[i]f the discussions at issue do not dispute the amount or validity of the claim, but rather discuss only the terms of resolving that claim, Fed. R. Evid. 408 will

---

[3] It is not the Court's role to determine issues of fact, and it does not do so here, but there is evidentiary support for Defendants' account.  For example, even after it was alerted to Atlas's financial difficulties, Master-Halco continued doing business with Atlas for several months on a "cash on demand-plus" basis, whereby Master-Halco continued making sales to Atlas in exchange for cash payments plus an additional amount to pay down Atlas's existing debt.  *See* Defs.' Opp'n to Pl.'s Mots. [doc. # 95] at 3.

not operate to exclude evidence of those discussions").[4]

Rather than offers to compromise a disputed claim, evidence of this type are more in the nature of admissible "business communications," as discussed in *Pierce*, 955 F.2d at 827.  *See also Walsh v. First UNUM Life Ins. Co*., 982 F. Supp. 929, 931 (W.D.N.Y. 1997) (holding that communications to the plaintiff from a disability insurer while the plaintiff was receiving disability benefits were business communications rather than offers to compromise, and thus outside the scope of Rule 408, because the insurer did not dispute the plaintiff's claim, but merely offered to change the form of his disability payments).  Insofar as the evidence that Defendants seek to introduce did not involve an offer to compromise a *disputed* claim, Rule 408 is simply inapplicable.  *See Pierce*, 955 F.2d at 827; *In re B.D. Int'l Discount Corp.*, 701 F.2d at 1074 n.5.

There is other evidence, however, for which Master-Halco has a stronger argument under Rule 408.  In particular, the parties have brought to the Court's attention Defendants' Trial Exhibit 599, which is a letter dated April 8, 2004, from Mr. Hellman, counsel to Atlas and Mr. Picard, to the attorney for Master-Halco, George Royster, who also represents Plaintiff in this case.  Some three months earlier, on January 26, 2004, Master-Halco had filed three lawsuits in the Federal District Court for the District of Connecticut, one each against Atlas and its alleged alter-egos; Michael Picard; and Edith Picard and John Uvino.  *See supra* note 1.  In the letter of April 8, 2004, Mr.

---

[4] *See also M'Niel v. Holbrook*, 37 U.S. (12 Peters) 84, 87 (1838) (upholding the trial judge's decision to permit the introduction of evidence at trial suggesting that the debtor had admitted the debt while negotiating with the creditor for more time, explaining that: "There does not appear to have been any dispute between the parties, as to the amount due to the notes, nor as to the plaintiff's right to receive it.  [T]he negotiation as disclosed in the testimony, was altogether concerning the time of payment, and not in relation to the amount to be paid; and the defendant, in the course of that negotiation, admitted the debt; and offered to confess judgment for it in the suit then pending, provided time was given to him for the payment of a part. . . .  The case does not come within the reason or the principle which excludes offers to pay, made by way of compromise upon a disputed claim, and to

Hellman offers to permit Master-Halco a judgment on assets of Atlas it had attached (with Mr. Picard's assistance) in exchange for general releases of all claims against Mr. Picard; his mother, Edith Picard; John Uvino; and "all of the various Atlas entities." *See* Tr. Ex. 599. The letter also discusses certain "unpleasant realities," including that Atlas had no assets, beyond those already attached, to satisfy its debt to Master-Halco; and that, in the event of an imminent Chapter 7 bankruptcy filing, Master-Halco would not only lose the assets it had already attached (since they would have been obtained within 90 days of the filing, making them preferential, *see* 11 U.S.C. § 547), but all of Master-Halco's claims related to Atlas would belong to the bankruptcy trustee, with any recovery to be shared with all of Atlas's unsecured creditors, *see* 11 U.S.C. § 544. *See id.* While Mr. Hellman's letter does not dispute the validity or amount of the claims against Atlas or Mr. Picard, it *does* dispute the validity of the claims Master-Halco had asserted against Edith Picard, John Uvino, and other entities alleged to be alter-egos of Atlas. *See id.* During the telephonic pretrial conference, counsel for both parties indicated that Master-Halco essentially ignored Mr. Hellman's offer. Less than two weeks later, on April 21, 2004, Mr. Picard filed for Chapter 7 bankruptcy, *see* Compl. [doc. # 15] ¶ 38, with Atlas and its subsidiaries following suit on May 19, 2004, *see id.* ¶ 36. The Court gathers from the parties that Mr. Hellman's predictions regarding the "unpleasant realities" of the situation have come true.

As mentioned previously, Defendants wish to use this letter, and evidence of a similar nature, for two purposes: to dispute Master-Halco's factual assertions related to causation – i.e., that but for the misleading financial statement prepared by Defendants, it would have filed suit earlier, successfully attached assets, and defended them against any subsequent claims of other creditors in

buy peace.").

any bankruptcy filing Master-Halco's actions may have precipitated, *see* Compl. [doc. # 15] ¶ 24; and to call into question Master-Halco's chosen course of conduct – costly, yet generally unsuccessful "scorched earth" litigation – when lower-cost alternatives were available to it.  Master-Halco's primary objection to the admissibility of the evidence relates to the second purpose; it argues that since the largest portion of the recovery it seeks in this suit is the attorneys' fees incurred litigating those other cases, this proffered use would amount to using the evidence to prove the "amount" of a disputed claim, a prohibited use under Rule 408(a).  *See* Pl.'s Supp. Br. [doc. # 129] at 1-3.  Master-Halco argues further that Defendants want to use the evidence to argue, essentially, that Plaintiff failed to mitigate its damages, which the Second Circuit expressly held in *Pierce* was not a permitted use under the Rule's exception.  *See Pierce*, 955 F.2d at 826-27 ("Evidence that demonstrates a failure to mitigate damages goes to the 'amount' of the claim and thus, if the offer was made in the course of compromise negotiations, it is barred under the plain language of Rule 408.").

While the Court finds some merit in Master-Halco's argument, and concedes that this is an admittedly close call, it ultimately believes that Defendants' proffered use of this evidence is permitted under Rule 408.  Moreover, due to the particular nature of Master-Halco's claims and the relief it requests, the Court also believes that the disputed evidence is required for the fair adjudication of this case.  *See* Fed. R. Evid. 102 ("These rules shall be construed to secure fairness in administration . . . to the end that the truth may be ascertained and proceedings justly determined.").  The Court reaches this conclusion for a number of reasons.

To begin, it is not at all clear that Rule 408 applies to a situation such as this, where the evidence relates to offers to compromise claims in other cases against other defendants.  There is

some support for the proposition that Rule 408 prohibits only the introduction of evidence about settlement of the very claims at issue in the same case.  For example, in *Starter Corporation v. Converse, Inc.*, the Second Circuit permitted a party to use evidence of a settlement agreement between the same parties to the litigation in order to support the defendant's claim of equitable estoppel; it explained that "evidence of a settlement agreement and its surrounding circumstances 'though otherwise barred by Rule 408, can fall outside the Rule if it is offered for 'another purpose,' i.e., for a purpose other than to prove or disprove the validity of the claims *that [the agreement] was meant to settle*.'"  170 F.3d 286, 293 (2d Cir. 1999) (alteration in original, citation omitted, emphasis added).  For that proposition, *Starter* quoted *Trebor Sportswear Co. v. Limited Stores, Inc*., which said that permissible purposes of the evidence include "a purpose other than to prove or disprove the validity of the claims *that the offers were meant to settle*."  865 F.2d 506, 510 (2d Cir. 1989) (emphasis added); *see also Atronic Int'l, GMBH v. SAI Semispecialists of Am., Inc.*, No. 03CV4892, 2006 WL 2654827, at *7 (E.D.N.Y. Sept. 15, 2006).  The Advisory Committee notes on Rule 408 can be read to support this conclusion as well, though it is not clear how much one should read into the choice of a definite article over an indefinite one.  *See* Fed. R. Evid. 408 Advisory Committee note ("As a matter of general agreement, evidence of an offer to compromise a claim is not receivable in evidence as an admission of, as the case may be, the validity or invalidity of *the* claim.") (emphasis added).

This distinction makes some sense, too, as the policy concerns animating the Rule will not generally be present – or at least not to the same degree – when the evidence of settlement negotiations concerns claims not at issue in the trial for which the evidence is introduced.  The Rule codifies the general presumption that the risk of unfair prejudice is too great when the jury is

presented evidence of an offer to settle a claim for which it must determine liability; in that situation, the jury may infer that the party offering to settle perceived a weakness in its claim or defense.  Rule 408 reflects the concern that the risk of "spillover" prejudice cannot be effectively overcome even by an appropriate limiting instruction.  *See Starter*, 170 F.3d at 294.

But when settlement-related evidence is related to a claim not under consideration by the jury, courts generally permit its introduction, so long as it is otherwise admissible, if it is relevant to a claim that is at issue.  *See, e.g.*, *Carr v. Health Ins. Plan of Greater N.Y., Inc.*, No. 99CV3706, 2001 WL 563722, at *4 (S.D.N.Y. May 24, 2001) (holding that statements from settlement negotiations are admissible "because they are being introduced not to prove liability for claims being settled, but for an entirely separate claim of retaliation"); *Carney v. American Univ.*, 151 F.3d 1090, 1095 (D.C. Cir. 1998) (same); *Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284, 1293-94 (6th Cir. 1997) (adhering to the "general principle" that "Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim") (quoting Charles Alan Wright & Kenneth Graham, Jr., *Federal Practice & Procedure: Evidence* § 5314 (1st ed. 1980)); *Broadcort Capital Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1194 (10th Cir. 1992) (permitting evidence related to settlement negotiations to be admitted because "[h]ere, the evidence related to an entirely different claim—the evidence was not admitted to prove the validity or amount of the 'claim under negotiation.'  Thus, Rule 408 did not bar this evidence because it related to settlement discussions that involved a different claim than the one at issue in the current trial.") (quoting *Vulcan Hart Corp. v. NLRB*, 718 F.2d 269, 277 (8th Cir. 1983)); *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1363 (10th Cir. 1987) (holding that Rule 408 "does not appear to cover compromises and compromise offers that do not involve the dispute

13

that is the subject of the suit"); *cf. Pace v. Paris Maintenance Co.*, 7 Fed. Appx. 94, 97 (2d Cir. 2001) (summary order) (holding that the plaintiff's attempt to introduce a statement from a settlement negotiation to support an independent claim of retaliation "might have some force" if the plaintiff had any evidence of a discriminatory motive).

In fact, the Second Circuit has even sanctioned the use of settlement-related evidence when there is some overlap between the validity of the compromised claim and a necessary element of the claim before the jury.  For example, in *PRL USA Holdings, Inc. v. U.S. Polo Association*, Judge Leval, writing for the Second Circuit, recognized "a likely logical overlap" between the parties' prior settlement, whereby PRL allegedly assured the U.S. Polo Association that it could use a trademark without fear of challenge from PRL, and the U.S. Polo Association's affirmative defense of acquiescence in a subsequent suit over its use of the same mark.  *See* 520 F.3d at 113.  Nonetheless, Judge Leval also acknowledged the well-recognized rule that:

> if a trademark owner tells a potential defendant that it will not assert a claim of infringement based on the use of a particular mark, and the recipient of that assurance relies on the assurance to its substantial detriment, as by spending substantial sums in the development of the mark on which it received the assurance, estoppel will bar the trademark owner from subsequently claiming infringement.

*Id.*  In such a situation, "[t]he only way" the party asserting estoppel "could place its entitlement to estoppel in contention was by offering th[e] evidence" related to the prior settlement negotiations. *Id.*  Judge Leval concluded by "recogniz[ing] that in some instances a defendant could employ a claim of estoppel pretextually and abusively as a ploy to suggest impermissible inferences derived from settlement discussions," but was satisfied that "this was not such a case." *Id.*

The Defendants in this case are in a position not unlike that of the defendant in *PRL*.  Here, Master-Halco wants to force the Defendants to pay the attorneys' fees it incurred litigating other

cases.  Defendants would like to challenge Master-Halco's assertion that it acted reasonably in

incurring those fees by showing that Master-Halco had opportunities to recover as much, if not

more, than it did in those other suits while spending far less on litigation.  If it finds for Master-

Halco on liability, the jury will necessarily have to assess the reasonableness of the attorneys' fees

Master-Halco expended in those other cases when calculating damages.  While that ordinarily would

be a task for the Court, since Master-Halco seeks reimbursement for these fees as a component of

compensatory damages, the jury will have to determine "what a reasonable, paying client would be

willing to pay" under all the circumstances.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n*

*v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2006).

The factors the jury will be asked to consider in making this determination include, but are

not limited to:

> the complexity and difficulty of the case, the available expertise and capacity of the
> client's other counsel (if any), the resources required to prosecute the case effectively
> (taking account of the resources being marshaled on the other side but not endorsing
> scorched earth tactics), the timing demands of the case, whether an attorney might
> have an interest (independent of that of his client) in achieving the ends of the
> litigation or might initiate the representation himself, . . . and other returns (such as
> reputation, etc.) that an attorney might expect from the representation.

*Id.*  The Second Circuit in *Arbor Hill* emphasized that in cases where successful plaintiffs can shift

fees, they may have insufficient incentives to ensure that their attorneys do not "recoup fees that the

market would not otherwise bear."  *Id.* ("Indeed, the district court (unfortunately) bears the burden of

disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay

the least amount necessary to litigate the case effectively.").  While *Arbor Hill*'s merits concerned

civil rights, and the fees the plaintiffs' sought to recover were collateral to the primary litigation, the

need to ensure that plaintiffs do not recover unreasonably-expended attorneys' fees is no different

where, as here, the fees are instead a component of compensatory damages.  The Court cannot see

how the jury can be expected to evaluate meaningfully the factors outlined in *Arbor Hill* to make a

determination as to "what a reasonable, paying client would be willing to pay" for Master-Halco's

litigation against Atlas, Mr. Picard and others without having access to substantially the same

information that Master-Halco had when it made the decisions to incur those expenses.  *See* 2

Weinstein & Berger, *Weinstein's Federal Evid.*¶ 408.08 [5] ("Where the settlement negotiations and

terms explain and are a part of another dispute they must often be must often be admitted if the trier

is to understand the case.").

     Several courts have looked to evidence of this type to determine the reasonableness of

attorneys' fees, and the Court cannot see why the jury here should not have the same opportunity

when called upon to make the same determination.  *See, e.g.*, *EMI v. CBS-Fox Co.*, No. 86CV1149,

1996 WL 280813, at *1-3 (S.D.N.Y. May 24, 1996) (holding, in a copyright case, that "evidence of

the alleged settlement negotiations is not being offered to prove 'either liability for or invalidity of

the claim or its amount.'  Rather, it is being offered to show that the Court's rejection of the claim

should not merit an award of attorney's fees under the Court's power of equitable discretion,"

because evidence of settlement negotiations between the parties suggested that the plaintiff's claim

was not "objectively unreasonable.");  *Lohman v. Duryea Borough*, 574 F.3d 163, 167-68 (3d Cir.

2009) (permitting consideration of evidence of settlement negotiations to determine the degree of

success achieved by the plaintiff, even without a Rule 68 offer of judgment, because " the use of

such evidence as bearing on the issue of what relief was sought by a plaintiff" – to be compared to

what was attained – "does not offend the clear terms of Rule 408" nor public policy); *see also*

*Moriarty v. Svec*, 233 F.3d 955 (7th Cir. 2000) ("Substantial settlement offers should be considered

by the district court as a factor in determining an award of reasonable attorney's fees, even where Rule 68 does not apply."); *Bidwell and Bidwell*, 173 Ore. App. 288, 292-93 (2001) (admitting evidence of letters sent during settlement negotiations, over objection that they violated the state-law analogue to Fed. R. Evid. 408, offered to prove that one party did not pursue settlement in objectively reasonable manner, thereby making him liable for the other party's attorneys' fees, because the letters were not offered to "prove liability for or invalidity of" any claim); *cf. Marek v. Chesny*, 473 U.S. 1, 11 (1985) ("[P]revailing at trial may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.  In a case where a rejected settlement offer exceeds the ultimate recovery, the plaintiff—although technically the prevailing party—has not received any monetary benefits from the postoffer services of his attorney.") (citation and quotation marks omitted); *Vilkhu v. City of New York*, No. 06CV2095, 2009 WL 1851019, at *17 n.17 (E.D.N.Y. June 26, 2009) ("While rejection of a Rule 68 offer in and of itself does not  . . . warrant a fee reduction, the similarity between defendants' Rule 68 offer and the amount of damages ultimately recovered nevertheless suggests that plaintiff consistently overstated the value of his claims.  Accordingly, it is appropriate to take this similarity into account when assessing the extent of plaintiff's success" in ruling on a fee petition.).

In sum, the Court believes that the Defendants' intended use of the offers Master-Halco received to settle those other cases fits within Rule 408's "another purpose" exception.  Defendants are not using the evidence for its probative value in tending to prove or disprove any of the elements of Master-Halco's claims in this case.  They simply want to suggest that Master-Halco acted unreasonably in incurring more than $2 million in attorneys' fees to recover a $600,000 debt in unsuccessful litigation involving other claims against other defendants in other cases.  And given

that Master-Halco will argue that those fees were incurred reasonably, and that Defendants are responsible for them, it would be inequitable to force Defendants to defend themselves with one hand tied behind their backs.

Additionally, the Court believes that the need and value of this evidence far outweighs the potential of discouraging future settlement negotiations. *See Starter*, 170 F.3d at 293 ("In applying the 'another purpose' exception to Rule 408, 'the trial judge should weigh the need for such evidence against the potentiality of discouraging future settlement negotiations.'") (quoting *Trebor Sportswear*, 865 F.3d at 510-11)).  As explained above, the Court believes that this evidence is not only highly probative of the question of whether Master-Halco acted reasonably, but also vital to fundamental fairness.  Though Master-Halco has argued that admitting this evidence will discourage future settlement negotiations, the proffers given by the parties suggests that, in reality, Master-Halco ignored all entreaties to even engage in settlement discussions; it is hard to see how admitting evidence of that fact would "flout the policy of promoting compromises under the Rule." *Id.* at 294. Moreover, Master-Halco ignores the related and competing public policy consideration in "avoiding wasteful litigation," *id.*, which is hardly advanced by insulating from scrutiny its decision to spend in attorneys' fees some four to five times what it sought to recover in litigation.  *See Arbor Hill*, 522 F.3d at 184.  Finally, the unusual posture of this case makes the likelihood of this issue recurring with any frequency quite slim. *See* Restatement (Second) Torts § 914(1) ("The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation.").

### III.

Although nearly all of Master-Halco's objections to the admission of the above-discussed evidence were based on Rule 408, it did assert, almost in passing, that the evidence is also barred by

18

Rule 403 because it would cause unfair prejudice and/or would confuse the jury.  *See* Fed. R. Evid.

403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed

by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .").  Master-

Halco provides essentially no support for this assertion, and it need not detain the Court long.

   Master-Halco has not identified how or why the evidence that it had offers to settle the other

claims would cause it any unfair prejudice.  The evidence does not bear much on the elements that

Master-Halco must prove to succeed on its claims; if anything, the offers to compromise could cause

*Defendants* unfair prejudice, as Plaintiff's claims for aiding and abetting and civil conspiracy

necessarily rely on proving the tortious conduct of others.  *See* Order dated April 8, 2010 [doc.

# 125].  Master-Halco also does not explain how this evidence could confuse or mislead the jury,

and if there is a reason, it is not self-evident to the Court.  Finally, counsel for Master-Halco argued

during the teleconference on April 13, 2010 that the evidence regarding offers of settlement is too

speculative to be admitted – i.e., that simply because Master-Halco had an offer to settle, it did not

mean that it would have actually been paid what the offeror was promising.  This is, of course, true,

as no one can know what would have happened in that counter-factual scenario.  But the same can

be said with equal (if not more) force about Master-Halco's entire theory of liability in this case –

that, but for the alleged wrongdoing of the Defendants, Master-Halco would have sued Mr. Picard

and Atlas much earlier; successfully attached assets; and defended those attachments against the

myriad of other unsecured creditors if and when Mr. Picard and Atlas filed for bankruptcy.  The

Court is hard-pressed to imagine how Defendants argument is more speculative than that of the

Plaintiff.  Fortunately, however, it will be for the jury, and not the Court, to make that determination.

   Though the Court thinks the admission of the offers of settlement is quite unlikely to cause

any confusion and/or unfair prejudice, Master-Halco may supply the Court with an appropriate cautionary instruction for the jury.  Additionally, as discussed during the teleconference, the Court will not permit Defendants to elicit testimony or introduce evidence that could force Plaintiff's counsel into the untenable position of having to testify about the settlement negotiations.  *See Pierce*, 955 F.2d at 828.  If the parties are concerned about this possibility, the Court would encourage them to consider stipulating to the relevant facts.

Finally, insofar as Master-Halco has argued that since Defendants will be permitted to introduce evidence of settlement negotiations regarding other cases, the Plaintiff should be allowed to introduce evidence of offers to compromise claims in *this* case, this argument is devoid of all merit.  Master-Halco has not even attempted to argue that the evidence would be used for a proper purpose, relying on the bare, unsupportable assertion that the Court should indulge pure tit-for-tat gamesmanship.  This the Court will not do.

## IV.

For the foregoing reasons, Plaintiff's motion to exclude evidence of offers to settle other cases is DENIED to the extent explained above.

IT IS SO ORDERED.

/s/  Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: April 15, 2010**.