# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MASTER-HALCO, INC.,       :
              :
      Plaintiff,     :
              :     No. 3:09cv1546 (MRK)
v.              :
              :
SCILLIA, DOWLING &      :
NATARELLI, LLC, et al.,     :
              :
      Defendants.    :

## MEMORANDUM OF DECISION

Plaintiff Master-Halco, Inc. ("Master-Halco") sued four Defendants – Scillia, Dowling & Natarelli, LLC, an accounting firm; two of the firm's certified public accountants, Joseph Natarelli and Robert Mercado; and its parent company, UHY, LLC – alleging fraudulent misrepresentation, aiding and abetting fraud, and civil conspiracy to commit fraud. *See* Compl. [doc. # 15]. This decision relates to two issues that arose in the course of the Court's preparation of the jury charge – namely, the appropriate burden of proof that Master-Halco must satisfy in establishing its common-law claims of civil conspiracy to commit fraud (Count One) and aiding and abetting fraud (Count Two).[1]

While conceding that all but one element of fraud must be proven by the heightened clear-

---

[1] The Court ruled on these issues during the charge conference held at the end of the first day of trial, promising the parties that a decision would follow explaining the Court's reasoning. After the third day of trial, but before completing its case in chief, Master-Halco (with the Defendants' consent) decided to withdraw this case with prejudice. *See* Order Dismissing Case dated Apr. 29, 2010 [doc. # 158]. Despite the dismissal of the case, the Court has decided to release this opinion, as promised to the parties, in the hope that it may be of assistance to future courts considering these same issues.

and-convincing-evidence standard, Master-Halco has argued that under Connecticut common law, the additional elements necessary to prove civil conspiracy and aiding and abetting liability need be proven only by a preponderance of the evidence. *See generally* Pl.'s Obj. to Verdict Form and Jury Instructions [doc. # 48]. Defendants, meanwhile, have asserted that all of the additional elements must also be proven by clear and convincing evidence. *See* Defs.' Obj. to Draft Jury Instructions and Verdict Form [doc. # 150] at 6-7.

After considering the parties' arguments, and conscious of the caution that this Court must exercise in interpreting the common law of the State of Connecticut, the Court concludes that the appropriate burden of proof to be applied to the unique elements of civil conspiracy to commit common-law fraud and aiding and abetting common-law fraud, like the standard applied to most of the elements of the underlying fraud itself, is clear and convincing evidence. The reasoning for this conclusion is explained below.

## I.

While the Court has explained the factual background and procedural history of this case numerous times in ruling on various pretrial evidentiary matters, it will do so once more. Plaintiff Master-Halco is a manufacturer of fencing materials, which it sells throughout the country. One of its biggest customers – particularly in New England – was for a number of years (and is once more) Atlas Fence and its subsidiaries (referred to collectively as "Atlas"). Atlas is a Connecticut company

2

that at all times relevant to this case was owned and operated by Michael Picard.[2]  For portions of

2002 and 2003, Atlas was also a client of the accounting firm, Scillia, Dowling & Natarelli, LLC.

The gravamen of Master-Halco's lawsuit was that in late 2002 or early 2003, the Defendants

created an intentionally-misleading and fraudulent financial statement for Atlas for the express

purpose of inducing Master-Halco into delaying taking any action to collect on the approximately

$600,000 debt it was owed by Atlas.  Master-Halco claims that by the time it realized the precarious

financial state that Atlas was actually in, Mr. Picard – with the Defendants' assistance – had

successfully hidden and/or otherwise disposed of the company's and Mr. Picard's  assets, such that

there was nothing left for Master-Halco to attach for satisfaction of its debt.  Master-Halco sought to

hold Defendants responsible for their alleged wrongdoing, on the theory that:

> Master-Halco relied on the financial statement prepared by [Defendants] to ship
> goods [to Atlas].  If [Master-Halco] had known the truth, however, [it] would not
> have been likely to continue shipping goods and would have moved to bring [its]
> debt to judgment or sought a prejudgment remedy against Picard and Atlas at an
> earlier point in time, and/or would have otherwise moved to protect [its] debt, and it
> is likely that an attachment could have been made at a time before Picard had a
> chance to make his assets disappear.

Compl. [doc. # 15] ¶ 24.

While Master-Halco did not name either Atlas or Mr. Picard as a defendant in this action, it

---

[2] While Atlas and its subsidiaries were recently liquidated in bankruptcy proceedings, the Atlas
name and some of its other assets were bought by Mr. Picard and his new company, which now does
business as Atlas.  Where relevant, details of that bankruptcy and its effects will be recited, but
generally speaking, the details are immaterial for purposes of deciding the issues before the Court.
Therefore, for ease of understanding, references to Atlas and/or Mr. Picard will be made without
distinction to Atlas's various iterations.

did bring lawsuits against both in 2004,[3] which, after being referred to the bankruptcy court, were settled sometime in 2008.  In addition to seeking compensation for that part of the Atlas debt it was never paid, Master-Halco also seeks to recover in this lawsuit the attorneys' fees it expended while unsuccessfully litigating the lawsuits against Atlas, Mr. Picard, and numerous other individuals it has alleged were involved in Mr. Picard's fraudulent schemes.[4]  *See* Restatement (Second) Torts § 914 (explaining that although "damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation," "[o]ne who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action").  The total of these attorneys' fees exceeds $2 million.

As mentioned, Count One of Master-Halco's Complaint alleges that the Defendants engaged in a civil conspiracy with Mr. Picard to commit a fraud against Master-Halco, while Count Two alleges that the Defendants aided and abetted Mr. Picard in his defrauding of Master-Halco.  *See* Compl. [doc. # 15].  The Complaint contains a third count of fraudulent misrepresentation, but it is unaffected by this decision.

---

[3] *See Master-Halco, Inc. v. Atlas Fence Co., Inc. et al.*, No. 04cv130 (D. Conn. filed Jan. 26, 2004); *Master-Halco, Inc. v. Michael Picard*, No. 04cv131 (D. Conn. filed Jan. 26, 2004).

[4]  *See, e.g.*, *Master-Halco, Inc. v. Ruocco et al.*, No. 06cv1221 (D. Conn. filed Aug. 4, 2006); *Master-Halco, Inc. v. D'Angelo et al.*, No. 06cv1006 (D. Conn. filed June 29, 2006); *Master-Halco, Inc. v. Edith Picard et al.*, No. 04cv129 (D. Conn. filed Jan. 26, 2004).

## II.

The Court has had occasion to explain the elements of common-law civil conspiracy once already in this case.  *See* Order dated Apr. 8, 2010 [doc. # 125].  As explained there, under Connecticut law, civil conspiracy is not an independent cause of action.  "Rather, the action is for damages caused *by acts committed pursuant to a formed conspiracy* rather than by the conspiracy itself. . . . Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort."  *Macomber v. Travelers Prop. & Casualty Corp.*, 277 Conn. 617, 636 (2006) (emphasis and alteration in original, citation omitted).  To succeed on a claim of civil conspiracy, a plaintiff must prove the following elements:

> (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff.

*Id.* at 635-36 (citation omitted).

The purpose of a civil conspiracy claim is to impose liability on all those who agreed to join the conspiracy.  By joining, the members become legally responsible for the tortious acts taken in furtherance of the object of the conspiracy, including actions taken by co-conspirators.  *See id.* at 636; *see also Noll v. Hartford Roman Catholic Diocesan Corp.*, No. X04CV024000582S, 2005 WL 2130212, at *2 (Conn. Super. Ct. July 29, 2005) ("[T]he benefit of . . . civil conspiracy to a plaintiff is not that it creates liability where otherwise none might exist, but rather it expands the universe of those potentially liable for the harm.").  To say that individuals "join" a conspiracy, thereby exposing them to liability, is to say that they agree to participate, in some manner, in the object of the conspiracy.  *See Macomber*, 277 Conn. at 636.  As explained by the Connecticut Supreme Court, implicit in the purpose of imposing civil conspiracy liability, as well as in the requirement that a

5

plaintiff prove an underlying tort, "is the notion that the coconspirator be liable for the damages flowing from the underlying tortious conduct to which the coconspirator agreed." *Id.*

Here, the tort on which Master-Halco has based its claim of civil conspiracy is the alleged fraud of Mr. Picard.  Thus, to succeed on its civil conspiracy claim, Master-Halco must necessarily prove that Mr. Picard did indeed commit fraud.  The law regarding common-law fraud is well established in Connecticut:

> Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . .  The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. . . .

*Weinstein v. Weinstein*, 275 Conn. 671, 685 (2005) (alterations in original, citation omitted).  "It is well established that common law fraud must be proven by a higher standard than a fair preponderance of the evidence," typically referred to as clear and convincing evidence.  *Kilduff v. Adams, Inc*., 219 Conn. 314, 328 (1991).  The one exception is that, in an action for fraud, the plaintiff need only prove damages by the preponderance of the evidence.  *See id.* at 330 ("[T]he trial court properly instructed the jury that the plaintiffs were required to prove their damages by a preponderance of the evidence and to prove all the other elements of fraud by clear and satisfactory evidence.").

While it has long been established that *fraud* must be proven by clear and convincing evidence – and no party disputes that proposition – the Court has been unable to locate a single Connecticut Supreme Court case that has addressed squarely the burden of proof applicable to claims of civil conspiracy to commit common-law fraud.  However, based on the Connecticut Supreme Court's treatment of a closely-related claim, as well as the Appellate Court's treatment of

6

civil conspiracy, the Court concludes that when the alleged civil conspiracy necessarily requires the plaintiff to prove fraud, the elements of civil conspiracy must also be proven by clear and convincing evidence.

To this Court's knowledge, the closest the Connecticut Supreme Court has come to directly answering the question posed in this opinion was in *Black v. Goodwin, Loomis & Britton, Inc*., 239 Conn. 144 (1996).  There, the Supreme Court considered the appropriate standard for proving "collusion," which the defendant insurance company had raised as a special defense.  The insurance company, Maryland Casualty, argued that the trial court erred in instructing the jury that the special defense of collusion had to be proven by clear and convincing evidence, asserting that "it should have been required to prove collusion by the lesser standard of a preponderance of the evidence in light of the fact that it sought to raise its claim of collusion as a shield rather than as a sword" – i.e., as an affirmative defense, rather than as a claim for relief.  *Id.* at 163.  The Connecticut Supreme Court was not persuaded:

> Maryland Casualty concedes that the appropriate standard of proof for the party who seeks to prevail in a civil fraud action is clear and convincing evidence.  In law, collusion is a species of fraud. . . .  [C]ollusion may be defined as an agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law.   Because collusion is a form of fraud, we see no reason, and Maryland Casualty has presented none, why the standard of proof for establishing collusion should be different depending on whether it comprises a cause of action or is raised as a special defense.  *See Pelarinos v. Henderson*, 34 Conn. App. 726, 731 [(1994)] ("[T]he defendants had the burden of proving their special defense of fraudulent misrepresentation by clear and convincing evidence").  Accordingly, we reject Maryland Casualty's claim.

*Id.* at 163-64 (quotation marks and citations omitted).

The reasoning in *Black* is straightforward and unambiguous: since "civil fraud action[s]" must be proven by clear and convincing evidence, and collusion "is a species of fraud," collusion

must be proven by clear and convincing evidence.  *Id.*  While *Black*'s primary holding was the rejection of Maryland Casualty's argument that the standard of proof ought to be different when fraud is raised as an affirmative defense, rather than as a direct claim for relief, the Connecticut Supreme Court was clearly unconcerned with the fact that it was applying a heightened evidentiary burden to a form of liability based on the concerted action of various individuals.  The dispositive factor in *Black* was the allegation of fraud; the form in which it was presented was irrelevant.

This is further corroborated by the Connecticut Supreme Court's own treatment of *Black* in the years since it was decided.  Just two years ago, for example, in a case that did not involve collusion (or any other theory of acting-in-concert liability), the Connecticut Supreme Court cited *Black* for the proposition that "the clear and convincing standard is the appropriate standard of proof in *common-law* fraud cases."  *Goldstar Med. Servs. v. Dep't of Soc. Servs.*, 288 Conn. 790, 819 (2008) (citing *Black*, 239 Conn. at 163) (emphasis in original).  Other Connecticut courts have similarly treated *Black* as standing for the simple proposition that civil fraud allegations must be proven by clear and convincing evidence, without regard to the fact that *Black* involved a form of acting-in-concert liability.  *See, e.g.*, *Friezo v. Friezo*, 281 Conn. 166, 196 (2007); *Capital Mortgage Assoc., LLC v. Hulton*, No. NNICV065000431S, 2009 WL 567057, at *16 (Conn. Super. Ct. Feb. 13, 2009); *Masek v. Wichelman*, No. CV065001510, 2009 WL 455532, at *10 n.6 (Conn. Super. Ct. Jan. 27, 2009); *Schrage v. Israel*, No. X08CV054006596S, 2008 WL 808614, at *3 (Conn. Super. Ct. Mar. 7, 2008); *Xerox Corp. v. Addressing Servs. Co*., No. HHBCV075003896S, 2007 WL 4755009, at *5 (Conn. Super. Ct. Dec. 6, 2007); *see also Realty Res. Chartered v. HB Nitkin Group*, No. 08CV586(MRK), 2009 WL 2243695, at *14 (D. Conn. July 24, 2009).

Since Master-Halco's claim of civil conspiracy to commit fraud is obviously a "civil fraud

8

action" within the meaning of *Black*, the liability of the Defendants must be proven by clear and convincing evidence. *See Black*, 239 Conn. at 163. This seems particularly appropriate given that the claim at issue in *Black* – collusion – appears to be virtually identical to, or perhaps a subset of, claims of civil conspiracy to commit common-law fraud. Both collusion and conspiracy to commit fraud require proof of an agreement between two or more persons to take an unlawful act or to achieve an unlawful end. *Compare id.* (explaining collusion) *with Macomber*, 277 Conn. at 635-36 (explaining the elements of civil conspiracy); *cf. Mills v. Mills*, 119 Conn. 612, 619 (1935) ("As employed in the law of divorce, collusion means an agreement between the parties to defraud or impose upon the court.").[5] This Court can see no principled reason for applying different standards

---

[5] In both the criminal and civil context, courts commonly use "collusion" and "conspiracy" synonymously, or they treat the former as evidence of the latter. For example, in *Bell Atlantic Corporation v. Twombly*, the United States Supreme Court held that to state a claim for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, which requires a "contract, combination . . ., or conspiracy, in restraint of trade or commerce," a plaintiff must plead facts that, if true, would show that the alleged anticompetitive behavior was the result of an agreement to engage in *collusive* behavior – as opposed to coincidental, self-interested, and independent (yet parallel) action on the part of the defendants. *See* 550 U.S. 544, 552-53 (2007). In its discussion, the Court makes clear that properly-plead allegations of an agreement to "collude" could satisfy the Sherman Act's requirements of a "conspiracy" to restrain trade. *See id.* at 566. In interpreting other statutes prohibiting conspiracies to commit an unlawful act or to achieve an unlawful end, courts routinely describe the conduct that must be proven as "collusion." *See, e.g.*, *United States v. Cure*, 804 F.2d 625, 630 (11th Cir. 1986) ("[A] customer's collusion with a financial institution to avoid filing [currency transaction reports] that the financial institution has a duty to file constitutes an unlawful conspiracy in violation of 18 U.S.C. § 371," which renders unlawful conspiracies to defraud the United States or to commit a crime against the United States); *United States v. Lyons*, 670 F.2d 77, 79 (7th Cir. 1982) ("[A]n antitrust violation may sometimes involve mail fraud, particularly in cases . . . where the success of the conspiracy requires submission of a false statement denying the existence of any collusion in the bids."); *Taylor v. Gibson*, 529 F.2d 709, 715 (5th Cir. 1976) ("It is now well established that private persons may be sued under [42 U.S.C.] Section 1983 when they are acting in conspiracy or collusion with state officials."); *United States v. Smith*, 504 F.2d 560, 561 (5th Cir. 1974) (affirming the trial court's decision to admit evidence of prior criminality because it "tended to show joint efforts of [the defendants] in a continuing scheme for the distribution of heroin," explaining that "collusion[is] an essential element of conspiracy."); *Marlowe v. Fisher Body*, 489 F.2d 1057, 1065 (6th Cir. 1973) (holding that allegations of "collusion" were sufficient to

of proof to two claims that appear to be, for all practical purposes, essentially synonymous.

Further strengthening this Court's conclusion that civil conspiracy to commit fraud must be proven by clear and convincing evidence is the Connecticut Appellate Court's holding in *Litchfield Asset Management Corporation v. Howell*, 70 Conn. App. 133 (2002). *Litchfield* involved claims of fraudulent conveyance and civil conspiracy to commit a fraudulent conveyance. On appeal, the defendants argued that the trial court had applied the wrong standard of proof in evaluating the plaintiff's civil conspiracy claim. *See id.* at 138-39. The Appellate Court agreed. *Id.* at 139.

The *Litchfield* Court first listed the elements for a claim of fraudulent conveyance, emphasizing that the elements, "including whether the defendants acted with fraudulent intent, must be proven by a heightened standard of proof, that of 'clear, precise and unequivocal evidence.'" *Litchfield*, 70 Conn. App. at 141 (citation omitted). The Appellate Court then explained what must be proven in regards to the civil conspiracy claim:

> the plaintiff was required to prove (1) that [two defendants] combined (2) to fraudulently transfer [the first defendant]'s assets, and (3) that [either of the two defendants] committed an act of fraud pursuant to the scheme (4) that resulted in damage to the plaintiff. Regarding the first and second elements, insofar as the transfer of assets to a newly formed company is not unlawful in and of itself, the plaintiff was required to prove, *by clear, precise and unequivocal evidence*, that the [defendants'] intent in agreeing to effect the transfer was fraudulent. Regarding the third element, the plaintiff needed to prove, *by clear, precise and unequivocal evidence*, that the [defendants] committed an act of fraud pursuant to their plan.

plead a claim under § 1985(3): "While the amended complaint does not use the word 'conspire' or 'conspiracy' it charges wrongful collusion and secret agreements between the defendants. . . . The complaint also satisfies the other requirements of § 1985(3) in that it charges that the collusion of the defendants was for the purpose of depriving plaintiff of equal employment opportunities, that the defendants acted in furtherance of their agreement and the result was injury to the plaintiff."); *see also Sonnentheil v. Christian Moerlein Brewing Co.*, 172 U.S. 401, 415 (1899) ("[I]n an action by the vendee of personal property against an officer attaching it as the property of the vendor, declarations of the vendor to a third party, made after the delivery of the property, are inadmissible to show fraud or conspiracy to defraud in the sale, unless the alleged collusion be established by independent evidence . . . .").

Finally, the plaintiff needed to show damages resulting from the conspiratorial acts.

*Id.* at 141-42 (emphasis added).  *Litchfield* went on to hold that the trial court's opinion was insufficiently clear as to the burden of proof that had been applied, faulting it, "in concluding that a conspiracy had been proven, [for saying] merely that it '[found] the evidence provided by the plaintiff *credible* with regard to its civil conspiracy claim.'"  *Id.* at 142 (emphasis and last alteration in original).

> The court made no specific finding as to whether the transfers were made fraudulently so as to meet the second and third elements of the test for conspiracy to defraud.  More importantly, to the extent we might consider that finding implicit, there is no indication that the court used anything but the preponderance of the evidence standard in conducting its determination.

*Id.*  While the Appellate Court did not cite *Black*, it used similar reasoning in summarizing the basis for its remand:

> Because a finding of fraud in this case was a necessary underpinning to a finding of a civil conspiracy, and because we are not satisfied that the court found by clear, precise and unequivocal evidence that [the defendants] made fraudulent transfers to and between [the corporate defendant], we reverse the court's judgment as to the finding of a civil conspiracy.

*Id.* at 143.

Here again, the logic is unambiguous: since the civil conspiracy claim was premised on fraud, which must be proven by clear and convincing evidence, the elements unique to the civil conspiracy claim also must be established by the heightened evidentiary burden.  *See id.*  At least one Connecticut Superior Court has interpreted *Litchfield* to require that civil conspiracy to commit fraud be proven by clear and convincing evidence.  *See Towne Brooke Dev., LLC v. Fox*, No. CV030347962S, 2003 WL 23177492, at *2 & n.3 (Conn. Super. Ct. Dec. 24, 2003); *see also WE 470 Murdock, LLC v. Cosmos Real Estate*, No. NNICV054003327S, 2007 WL 1748155, at *27

11

(Conn. Super. Ct. May 31, 2007), *rev'd on other grounds*, 109 Conn. App. 605 (2008) ("Taken as a whole . . . the evidence thus fails to reasonably support a finding that the plaintiff has met its burden of proving, by clear and convincing evidence, either any fraudulent conduct by [either defendant], or any conspiracy to engage in such conduct.").

In arguing to the contrary, Master-Halco has asserted that the Connecticut Appellate Court's decision in *American Diamond Exchange v. Alpert*, 101 Conn. App. 83 (2007), mandates the conclusion that Master-Halco need only prove its claim of civil conspiracy by a preponderance of the evidence. *See* Pl.'s Obj. to Verdict Form and Jury Instructions [doc. # 148] at 2-3. This Court is unpersuaded.

In *Alpert*, the Appellate Court reviewed the decision of a Judge Trial Referee holding for the plaintiff jewelry merchant on its claims of tortious interference with business expectancy and civil conspiracy, which it brought against its former estate buyer and his wife. The wife appealed, arguing, *inter alia*, that the evidence was insufficient to establish that she had an improper motive or had conspired with her husband. To prove tortious interference with business expectancy, a plaintiff is required to prove that the defendant "was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously." *Id.* at 90 (alteration in original, citation omitted). The *Alpert* Court rejected the wife's first argument mentioned above, holding that there was "ample evidence in the record from which the court could have found that the defendant had an improper motive." *Id.* at 91. Significantly, however, the Court did *not* hold that the wife was guilty of fraud – only that there was sufficient evidence to find that she had "an improper motive." *Id.*

*Alpert* then considered the wife's contention that "the court improperly concluded that she had committed civil conspiracy." *Id.* at 99. The wife primarily argued that "the plaintiff failed to

prove that she had combined with [her husband] with the intention of engaging in any unlawful conduct, which is an essential element of the cause of action." *Id.* The Appellate Court rejected this argument as well. It recited the elements of civil conspiracy, noted that the requisite proof of an agreement can be inferred from circumstantial evidence, and concluded that there was ample evidence of that nature to support the lower court's findings. *See id.* at 99-102.

Lastly, and most relevantly, *Alpert* rejected the defendant's argument that the lower court had applied the wrong standard of proof. *See id.* at 104-05. The defendant argued that "because the plaintiff's claims against the defendant were rooted in fraud, the plaintiff was required to prove its case by clear and convincing evidence, rather than by a preponderance of the evidence." *Id.* at 104-05. The Court disagreed, explaining that, "[t]he defendant mistakenly asserts that because fraud was a component of the misconduct alleged by the plaintiff, the complaint is rooted in fraud so as to be subject to the heightened standard of proof by clear and convincing evidence." *Id.* at 105.

> Although misrepresentation and fraudulent acts were *some* of the behaviors that comprised the tortious interference claim, *they were not an essential part thereof*. . . . [N]one of the counts against the defendant in the complaint *required* the court to find that she committed any fraudulent acts herself. The tortious interference claim was satisfied simply by the plaintiff's having demonstrated that the defendant intentionally interfered with its business relations without justification.

*Id.* (emphasis added, citations omitted). The Court concluded by saying that "[i]n a tortious interference case, such as the one before us, preponderance of the evidence is the appropriate burden of proof." *Id.*

The Court finds *Alpert*'s reasoning entirely consistent with *Black* and *Litchfield*. Unlike those two cases, the tort in *Alpert* upon which the civil conspiracy claim was based did not *require* the plaintiff to prove fraud; indeed, as the Appellate Court expressly stated, tortious interference can be premised on non-fraudulent actions. *See id.*; *see also Hi–Ho Tower, Inc. v. Com–Tronics, Inc.*,

13

255 Conn. 20, 34-37 (2000).   Accordingly, *Alpert* rejected the defendant's contention that "the complaint [was] rooted in fraud."  101 Conn. App. at 105.  By contrast, the claims in both *Black*, 239 Conn. at 163, and *Litchfield*, 70 Conn. App. at 141-43, required proving that the respective defendants committed fraud; and it was on that basis that a heightened evidentiary burden was applied.  *See also Charter Oak Lending Group, Inc. v. August*, No. X01CV054009529S, 2009 WL 2450734, at *7 (Conn. Super. Ct. July 8, 2009) (holding that the plaintiff had failed to prove by a preponderance of the evidence that the defendants had engaged in a civil conspiracy to commit violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*, which does not require proof of fraud).  Therefore, the Court disagrees with Master-Halco that *Alpert* is inconsistent with applying a clear-and-convincing standard to a claim of civil conspiracy to commit fraud.

As its final word on the matter, the Court adds that there appear to be sound policy reasons for applying the same standard of proof to a civil conspiracy claim that is applied to the underlying tort – particularly where, as is the case in Connecticut, the civil conspiracy claim cannot be an independent basis of liability, but must instead be paired with a substantive tort.  *See Macomber*, 277 Conn. at 636.  As the Connecticut Supreme Court explained in *Macomber*, "[t]he purpose of civil liability is to allocate the loss between persons who may be in some legal sense responsible for that loss."  *Id.* at 636.  And yet applying a lower standard of proof to the conspiracy elements would necessarily permit a plaintiff to hold co-conspirators legally responsible for fraud on considerably less proof than is required to impose liability on the principal fraudulent actor.  In explaining what must be proven to establish a civil conspiracy, the Connecticut Supreme Court has long emphasized that the justification for holding co-conspirators liable is based on the degree of commonality

14

between their intent and knowledge and that of the principal. *See, e.g.*, *Williams v. Maislen*, 116 Conn. 433, 438 (1933); ("[I]n order to justify a verdict under the count alleging conspiracy against any party, it would be necessary to find that that party was actuated in what he did by the same fraudulent intent, and that he had substantially the same knowledge of the fraudulent means and purposes as the other participants."). As the Court has explained already in this case, a potential risk in civil conspiracy claims is imposing liability on innocent parties. *See generally* Order dated Apr. 8, 2010 [doc. # 125] (explaining the scope the civil conspiracy liability). Given that risk, the Court cannot countenance why a plaintiff should have to provide *less* evidence of wrongdoing the further away from the wrongful acts it gets; such a rule does not seem reasonable or equitable.

The particular circumstances and allegations in this case bring this inequity into sharp relief. Master-Halco levied damning allegations of fraud against individuals – accountants – whose professional careers are premised, in large part, on their personal integrity. *See Kilduff v. Adams, Inc.*, 219 Conn. 314, 327 n.14 (1991) (explaining that one commonly-cited justification for a heightened evidentiary burden in cases alleging fraud is that "a person found guilty of fraudulent conduct suffers a 'stigma of guilt' regardless of whether the underlying action was civil or criminal"); *Masaki v. General Motors Corp.*, 71 Haw. 1, 15 (1989) ("The interests at stake in [fraud] cases are deemed to be more substantial than mere loss of money and some jurisdictions accordingly reduce the risk to the defendant of hav[ing] his reputation tarnished erroneously by increasing the plaintiff's burden of proof."). And yet the alleged principal wrongdoer, Mr. Picard, is not even a party to this case. In fact, Mr. Picard testified during trial that Master-Halco settled its fraud claim against him for about one percent of the sum Master-Halco has sought to recover from his alleged co-conspirators, the Defendants. Moreover, Master-Halco and Mr. Picard's new company have

15

resumed doing business together, and that business has generated considerable sums to both of them. Permitting Master-Halco to recover millions from these Defendants by proving their culpability on a significantly lower standard than that necessary to prove Mr. Picard's fraud strikes this Court as fundamentally unfair. What is more – and ironic – applying different standards could even create opportunities for collusion between a plaintiff and the primary tortfeasor, who will admit the wrongdoing, but implicate co-conspirators (perhaps with deeper pockets) against whom the plaintiff *will* obtain recovery on the basis of a lesser standard of proof.

As discussed previously, the Court's holding in this case is premised on its read of the Connecticut common law, primarily as it is explained in *Black* and *Litchfield*. That said, however, the Court also believes that this case illustrates the sound public policy reasons for applying the same evidentiary burden to civil conspiracy claims as is applied to the underlying tort with which it is paired.

## III.

While there is little Connecticut case law on the evidentiary standard applicable to civil conspiracy claims, there is even less with regard to aiding and abetting liability. The Court discusses case law on aiding and abetting liability (from Connecticut and elsewhere) below, but it is worth noting at the outset that virtually all of the reasoning set out above on civil conspiracy to commit common-law fraud is just as applicable to claims of aiding and abetting common-law fraud. As with civil conspiracy, plaintiffs alleging aiding and abetting liability must prove an underlying tort that defendants allegedly facilitated; it goes without saying that individuals cannot aid and abet themselves. *See Efthimiou v. Smith*, 268 Conn. 499, 505 (2004); *Hartley v. Boyd*, No. X02CV034004679SCLD, 2008 WL 442142, at *15 (Conn. Super. Ct. Feb. 4, 2008) ("A civil action

16

for aiding and abetting a breach of fiduciary duty depends upon the existence of a valid underlying cause of action for breach of fiduciary duty."). The primary distinction between civil conspiracy and aiding and abetting is that in the latter, unlike the former, the aider and abettor need not actually agree to bring about the tort. Instead, what must be proven for aider-abettor liability is that the individual gave substantial assistance to the tortfeasor in carrying out the tort with the knowledge – or reckless indifference to the possibility – that the assistance would aid in carrying out that tort. *See, e.g.*, *Fidelity Nat'l Title Ins. Co. v. Kissel*, No. X04CV065002386S, 2008 WL 4151299, at *2 (Conn. Super. Ct. Aug. 18, 2008) (explaining elements of aiding and abetting fraud claim); *Brunette v. Bristol Sav. Bank*, No. CV 92-0453957S, 1994 WL 468448 (Conn. Super. Ct. Aug. 22, 1994); *FDIC v. Romaniello*, No. CV 92-0294248, 1992 WL 369557 (Conn. Super. Ct. Dec. 3, 1992); *see also Halberstam v. Welch*, 705 F.2d 472, 476-485 (D.C. Cir. 1983) (explaining the difference between civil conspiracy and aiding and abetting).

As with civil conspiracy, it seems anomalous (to this Court at least) to hold aiders and abettors liable on a lower standard of proof than is necessary to prove the liability of the principal wrongdoer. While there may be slightly less stigma associated with being held liable for aiding and abetting fraud than there is with civil conspiracy to commit fraud – based on the fact that in civil conspiracy, the co-conspirator must have had the specific intent to bring about the tort, while an aider and abettor need only to have intended to give substantial assistance with some awareness that the principal would use it to cause the tort – the difference in stigma is likely quite small. That would seem particularly true with professionals, such as the Defendants, whose livelihoods depend largely on their reputations. *Cf. Kilduff*, 219 Conn. at 327 n.14; *see also Kekona v. Abastillas*, 113 Haw. 174, 181 (2006) ("[T]he element of fraud connotes dishonesty and effectively brands the liable

17

defendant with an imprimatur of quasi-criminality"). Thus, insofar as one concludes – as the Connecticut courts have – that fraud must be proven by a heightened evidentiary burden, the same logic would seem to require the aiding and abetting of that fraud to be proven by the same standard.[6]

In support of its argument that aiding and abetting fraud need only be proven by a preponderance of the evidence, Master-Halco has cited cases that dealt almost exclusively with claims of aiding and abetting *statutory* fraud.  *See* Pl.'s Obj. to Verdict Form and Jury Instructions [doc. # 148] at 1-2.  These cases are inapposite for at least two reasons.  First, the statutory cause of action that most of these cases involved – aiding and abetting violations of § 10(b) of the Securities Exchange Act of 1934 – was explicitly eliminated by the United States Supreme Court in 1994.  *See Cent. Bank, N.A. v. First Interstate Bank, N.A*, 511 U.S. 164 (1994).  Second, and more importantly, as these securities law cases themselves suggest, when attempting to discern the common law, it can be misleading to analogize from statutory law.

The Court will explain this second point further.  Prior to *Central Bank*, the Supreme Court had held that the proper standard for recovery under § 10(b) is a preponderance of the evidence, rejecting the Fifth Circuit's holding that since § 10(b) violations essentially amount to fraud, they must be proven by clear and convincing evidence.  *See Herman & Maclean v. Huddleston*, 459 U.S.

---

[6] The Court is aware that the Connecticut Supreme Court has been unable to conclusively establish why the Connecticut courts adopted the heightened evidentiary burden in fraud cases.  *See Kilduff*, 219 Conn. at 327 n.14 ("[T]he rationale for our imposition of a higher burden of proof for fraud claims is shrouded in the mist of the common law . . . .").  But as held in *Kilduff*, the Court does not believe "it necessary in deciding this case to articulate our rationale for continuing to apply an elevated standard or to address whether we should abandon that standard."  *Id.*  As long as Connecticut continues to apply a higher burden of proof to claims of common-law fraud, as it does, *see Goldstar Med. Servs. v. Dep't of Soc. Servs.*, 288 Conn. 790, 819 (2008), for the reasons explained here, this Court cannot see why that same standard should not apply equally to civil conspiracy and aiding and abetting claims premised on fraud.

375, 390 (1983).  In reaching that conclusion, the Fifth Circuit had reasoned from the common-law

requirement that civil fraud be proven by the heightened evidentiary standard.  *See Huddleston v.*

*Herman & MacLean*, 640 F.2d 534, 545-46 (5th Cir. 1981).

> Justice Marshall, writing for the Court, rejected the Fifth Circuit's analogy:

> [T]he antifraud provisions of the securities laws are not coextensive with common-law doctrines of fraud.  Indeed, an important purpose of the federal securities statutes was to rectify perceived deficiencies in the available common-law protections by establishing higher standards of conduct in the securities industry.  We therefore find reference to the common law in this instance unavailing.

459 U.S. at 388-89.  Justice Marshall explained further that "[w]here Congress has not prescribed the

appropriate standard of proof and the Constitution does not dictate a particular standard, we must

prescribe one," *id.* at 389, and concluded that "[a] preponderance-of-the-evidence standard allows

both parties to 'share the risk of error in roughly equal fashion.'"  *Id.* at 390 (citation omitted).[7]

Many state courts, in supplying the standard of proof necessary to establish violations of

their own securities fraud statutes, have followed the lead of the Supreme Court in *Huddleston* by

holding that securities fraud – and, where available, the aiding and abetting thereof – need only be

proven by a preponderance of the evidence.  *See, e.g.*, *State ex rel. Goettsch v. Diacide Distributors,*

*Inc.*, 561 N.W.2d 369, 372-73 (Iowa 1997); *State v. Offshore Fin.*, 124 Idaho 243, 249 (1993); *see*

*also Conn. Nat'l Bank v. Giacomi*, No. 105860, 1993 WL 392951, at *4 (Conn. Super. Ct. Sept. 28,

---

[7] A decade later, in *Central Bank*, the Court considered the question of whether § 10(b) permitted private parties to hold aiders and abettors liable for a principal's violation.  Every federal court to have considered the question, beginning in 1966 with *Brennan v. Midwestern United Life Insurance Company*, 259 F. Supp. 673 (D. Ind.), had concluded that § 10(b) permitted aider-abettor liability. *See Central Bank*, 511 U.S. at 192 (Stevens, J., dissenting).  The Court held in *Central Bank* that those decisions had been in error.  *See id.* at 177; *see also Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc*., 552 U.S. 148, 158-62 (2008) (discussing the post-*Central Bank* passage of the Private Securities Litigation Reform Act of 1995, 109 Stat. 757, which authorizes aiding and abetting liability in actions brought by the SEC, but not those initiated by private parties).

1993), *rev'd on other grounds*, 233 Conn. 304, 328 (1995).  Additionally, at least one state's highest

court, the Arizona Supreme Court, has relied upon pre-*Central Bank* federal cases, as well as cases

from other states interpreting their own Securities Exchange Act analogues, to hold that aiding and

abetting *common-law* fraud need only be proven by a preponderance of the evidence.  *See Wells*

*Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201

Ariz. 474, 490 n.16 (2002) (holding that although common-law fraud and civil conspiracy must be

proven by clear and convincing evidence, aiding and abetting fraud need only be proven by a

preponderance of the evidence).

      This Court does not believe that analogies to statutory fraud help when construing common-

law fraud.  As Justice Marshall stated in *Huddleston*, statutory causes of action for fraud have been

enacted, in large part, precisely because Congress believed that the common-law fraud doctrines

were insufficient for the task.  *See Huddleston*, 459 U.S. at 388-89.  Therefore, he reasoned,

applying the same heightened standard of proof to statutory claims that has long been applied to

common-law claims could frustrate the congressional purpose in passing the Securities Exchange

Act of 1934 in the first place.  *See id.* at 388-90.  Accordingly, he found "reference to the common

law" to be "unavailing."  *Id.* at 389.

      If one takes seriously *Huddleston*'s suggestion – that it can be misleading to analogize from

common-law evidentiary standards when deciding what standard ought to apply to statutory causes

of action – it seems like the inverse must be true as well: that analogizing from statutory standards to

determine common-law burdens of proof is also inappropriate.  The same can likely be said of

reasoning from state-law analogues to the Securities Exchange Act.  While these state statutes are

not necessarily aimed at the same problems that Congress sought to address with the Securities

Exchange Act, they were nonetheless – and necessarily – premised on the notion that existing causes of action, including those based on the common law, were inadequate. *See, e.g.*, *State ex rel. Miller v. Pace*, 677 N.W.2d 761, 767 n.2 (Iowa 2004) ("Iowa's [securities] law exists to protect the public from deceit perpetrated in the sale of securities and should be liberally construed to effectuate [that] purpose.   National securities laws have the broader purpose of protecting the integrity of the increasingly nationalized [securities] market.") (citations and quotation marks omitted, all but first alteration in original); *cf. id.* at 770 (explaining that the Iowa Consumer Fraud Act "is not a codification of common law fraud principles.   It permits relief upon a lesser showing that the defendant made a misrepresentation or omitted a material fact 'with the intent that others rely upon the . . . omission.'") (citation omitted, alteration in original).[8]   Therefore, since Master-Halco's claim of aiding and abetting fraud arises under the common law, the Court finds it more fitting to reason from other common law cases, as it has done, rather than to look to statutory claims.

As previously mentioned, this Court has been unable to find any Connecticut cases expressly considering the appropriate evidentiary burden for claims of aiding and abetting common-law fraud.   The closest is probably Superior Court Judge Blue's statement, in a case arising under the

---

[8] *Pace*, which applied a preponderance-of-the-evidence standard to claims of aiding and abetting violations of Iowa's securities law, is one of the three cases relied upon by the Arizona Supreme Court in *Wells Fargo* to hold that aiding and abetting common-law fraud need be proven only be a preponderance of the evidence.   *See* 201 Ariz. at 490 n.16. The other two cases it relied upon also applied that lower burden of proof to claims of aiding and abetting state statutes.   *See York v. InTrust Bank, N.A.*, 265 Kan. 271, 292-93 (1998) (Kansas Consumer Protection Act); *State v. Offshore Fin.*, 124 Idaho 243, 249 (1993) (Idaho Securities Act).   One Justice of the *Wells Fargo* Court similarly thought that these analogies were inapt.   *See Wells Fargo*, 201 Ariz. at 500 (Martone, J., dissenting) (criticizing the majority opinion for "sweep[ing] broadly, drawing on decisions from scores of other courts, to set forth, in dicta, rules for Arizona on issues not briefed by the parties.   To illustrate, the court concludes that the tort of aiding and abetting fraud, unlike fraud itself, requires proof only by a preponderance of the evidence. . . .   I should think that if fraud requires proof by clear and convincing evidence, aiding and abetting fraud would require the same.").

Connecticut Uniform Securities Act, suggesting that if, instead, the allegations of aiding and abetting fraud had been based on the common law, he would have applied a heightened evidentiary burden to them. *See Nat'l Bank v. Giacomi*, No. 105860, 1993 WL 392951, at *4 (Conn. Super. Ct. Sept. 28, 1993), *rev'd on other grounds*, 233 Conn. 304, 328 (1995) ("Because my ultimate decision is based on the Connecticut Uniform Securities Act, rather than common law fraud, my findings are based on the preponderance of the evidence standard generally applicable in civil actions." (citing *Huddleston*, 459 U.S. at 387-91)).  But since this statement was in *dicta*, the Court is uncomfortable relying on it.

At least two cases from the Southern District of New York have held, as a matter of New York law, that aiding and abetting common-law fraud must be proven by clear and convincing evidence.  *See McDaniel v. Bear Stearns & Co.*, 196 F. Supp. 2d 343, 358 (S.D.N.Y. 2002) (Scheindlin, J.); *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 488 (S.D.N.Y. 2001) (Sweet, J.).  Although Judge Sweet's opinion, upon which Judge Scheindlin relied in *McDaniel*, does not discuss the issue at length, it appears to base this holding on the fact that in New York, as in Connecticut, fraud must be proven by clear and convincing evidence.  *See Primavera*, 130 F. Supp. 2d at 488.  This reasoning would be consistent with that in *Black, Litchfield*, *Alpert* and *August*, discussed above, which, read together, suggest that the nature of the underlying tort should control the standard of proof for claims imposing vicarious liability on those who participate in that tort. *See Black*, 239 Conn. at 163-64; *Alpert*, 101 Conn. App. at 105; *Litchfield*, 70 Conn. App. at 142-43; *August*, 2009 WL 2450734, at *7.  This approach would also seem to conform to the way the federal courts have interpreted New York law.  *Compare Primavera*, 130 F. Supp. 2d at 488 ("A claim for aiding and abetting fraud must be proven by clear and convincing evidence.") *with Pittman by*

22

*Pittman v. Grayson*, 149 F.3d 111, 118 (2d Cir. 1998) (affirming a district court's decision, based on a preponderance of the evidence (and in a case not alleging fraud), that set aside a jury's verdict for a lack of evidence that the defendant airline knew that it was aiding and abetting one parent's violation of the other parent's custodial rights).

Given the absence of cases dealing directly with aiding and abetting common-law fraud, the Court returns once more to *Black*, and concludes that its reasoning also requires that Master-Halco's aiding and abetting claim be proven by clear and convincing evidence. Like the claim of collusion in *Black*, Master-Halco's aiding and abetting claim can be characterized only as a "civil fraud action." *Black*, 239 Conn. at 163. That factor was dispositive in *Black*, and the Court can see no reason why it should not be dispositive here, particularly given the conclusion it has reached with regard to the civil conspiracy claim. Therefore, unless and until the matter is clarified by the Connecticut appellate courts, this Court concludes that "the appropriate standard of proof for the party who seeks to prevail in a civil fraud action" – regardless of the form the allegations take or the party that raise them – "is clear and convincing evidence." *Id.*

IT IS SO ORDERED.

/s/   Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: May 3, 2010**.

23